Bloom *et al. v.* Franklin Life Insurance Company.

No. 11,618.

BLOOM ET AL. *v.* FRANKLIN LIFE INSURANCE COMPANY.

LIFE INSURANCE.—*Forfeiture in Case Assured shall Die from Intemperance, or in known Violation of Law.*—A provision in a policy of insurance providing that it shall be forfeited, in case the assured shall die by reason of intemperance, or while engaged in the known violation of law, is valid and enforceable.

SAME.—*Pleading.*—*Death of Assured Resulting from Commission of Assault and Battery.*—To a suit upon a life insurance policy, an answer, alleging in general terms, that the assured came to his death while engaged in the known violation of law by committing an assault and battery, and specifically stating facts constituting an assault and battery, is sufficient, although the term "unlawful" is not used.

SAME.—*Death of Assured from Violation of Civil Law.*—It is immaterial whether the death of the assured resulted from the violation of a criminal law, or of a positive rule of civil law, provided the violation of law was such as increased the risk and naturally led to his death.

SAME.—*Proximate Cause of Death.*—It is sufficient to relieve the insurance company if the known violation of law was such as to proximately lead to the death of the assured by bringing him into danger of losing his life.

SAME.—*Right of Husband to Defend Wife when Assaulted.*—An assault upon the person of the wife of another is a known violation of law, and justifies the husband in interfering to protect the wife from violence.

SAME.—It is not necessary in order to work a forfeiture, that the assured should die in the act of violating the law, but it is sufficient if it appears that the wounds received while engaged in a known violation of positive law are the cause of his death.

SAME.—*Presumption.*—*Interference of Husband for Protection of Wife.*—The presumption is that men will act in conformity to their natural habits and propensities, and one who violently assaults the wife of another is presumed to know that he endangers his life, as the presumption is that the husband will resist the assault with force.

SAME.—*Excuse.*—*Voluntary Drunkenness.*—The voluntary drunkenness of the assured while engaged in the known violation of law, causing his death, will not prevent a forfeiture of the policy of insurance.

From the Superior Court of Marion County.

*H. D. McMullen, D. T. Downey* and *F. Heiner,* for appellants.
*B. Harrison, W. H. H. Miller* and *J. B. Elam,* for appellee.

ELLIOTT, C. J.—The policy of insurance upon which the appellant's complaint is founded contains a provision that if the assured shall die by reason of intemperance from the use of intoxicating liquors, or in the known violation of the laws of the States or of the United States, the policy shall be void. The answer of the appellee, after setting forth the provision of the policy, proceeds as follows: "And this defendant avers that the said August Bloom, the assured, came to his death in the following manner, to wit: On or about the 29th day of December, 1881, the said August Bloom, while in a state of intoxication from the use of intoxicating liquors, did commit an assault and battery upon one Wilhelmina Bloom, the wife of his brother, Albert Bloom, at the town of Aurora, and State of Indiana, and while thus engaged in perpetrating said assault and battery, and while violently beating, bruising, choking and maltreating her, the said wife of his brother, he, the said August, being at the time in a state of intoxication, his brother, the said Albert, did then and there, for the purpose of lawfully defending his wife against said assault and battery, strike the said August Bloom upon the head with a jack plane, or some other wooden instrument, thereby fracturing the skull of him, the said August, and causing his death within a few hours thereafter."

There can be no question as to the force and validity of the provision of the policy declaring it to be of no effect in the event that the assured shall come to his death from the effects of intemperance, or while engaged in wilful violation of the law. We do not, indeed, understand the appellant as insisting upon the invalidity of this provision, but as asserting that the facts stated do not show that the assured died from the effects of intemperance, or that he met his death while engaged in knowingly violating the law.

We do not think that an answer, averring that the assured came to his death while engaged in violating the law, need be framed with the same precision as would be necessary in an indictment in a criminal prosecution. The rules of plead-

ing in civil cases are not so rigid and strict as they are in prosecutions for criminal offences. We can not, therefore, accept as a just standard the rule which obtains in cases of indictments, but even in such cases the pleading is good if it describes the offence in the language of the statute, or in language of equivalent meaning.

The answer charges that the assured did commit an assault and battery, and then sets forth the facts constituting the offence. It is true that the language of the statute defining the offence is not pursued, but we do not think this was necessary, for all that it was incumbent upon the appellee to do was to state such facts as would enable the court to conclude as matter of law, that there was an assault and battery committed. The facts stated warrant this conclusion. It is not necessary in a complaint to anticipate defences, nor is it necessary in an answer to anticipate matters that might be replied in avoidance. In the one case it is sufficient to make a *prima facie* cause of action, and in the other, to make a *prima facie* defence. We can see no reason for taking this case out of the general rule. It is true forfeitures are odious and that courts are slow to enforce them, but this consideration does not affect the rules of pleading. The reluctance of courts to enforce forfeitures does not change the rules of pleading, but does, in a high degree, affect the causes assigned in support of the claim of forfeiture. The question, under the rule against enforcing forfeitures is not in what manner are the grounds of forfeiture pleaded, but it is, what are the grounds? Are they so important and material as to compel a declaration of forfeiture? If, in this case, the answer shows that the assured came to his death in the known violation of law, then there is a cause of forfeiture shown, no matter how inartistically drawn the pleading may be; for the inquiry is, not as to the manner of pleading, but as to the substance of the plea. It seems quite clear that the facts stated would be abundantly sufficient in a complaint to recover damages for an assault and battery, and if this be

true, there is no reason why they should not be sufficient when the assault and battery is pleaded as a defence. If the facts are such as show an assault and battery, then, if an assault and battery is a defence, the pleading is sufficient, no matter what may be the character of the action in which it is interposed. The pleading under immediate mention does state facts constituting an assault and battery, and does show an offence involving a wilful violation of law. At all events the facts stated in the answer, and admitted by the demurrer, are enough to put the appellants to a reply.

Granting it to be true, as decided in *Cluff* v. *Mutual, etc., Insurance Company*, 13 Allen, 308, that the violation of law must, in order to avoid the policy, be a breach of some criminal statute, still the answer is good, for courts judicially know that an assault and battery is an offence punishable as a crime. The words "assault and battery," employed in the answer, have, and for centuries have had, a definite and settled meaning, and we can assign that meaning to them, not only without encroaching upon any rule of law, but in close harmony with long and firmly settled principles. We may, with justice and propriety, apply to the pleading before us the rule adopted in *Burk* v. *State*, 27 Ind. 430, where it was held that a crime was well defined if the Legislature employed a phrase of a definite and settled meaning. In that case the phrase was "public nuisance," and it was held to be a sufficient definition of the offence. *State* v. *Berdetta*, 73 Ind. 185, *vide* opinion, 196; S. C., 38 Am. R. 117. Taking the general words used in the answer, in conjunction with the statement of specific facts, and it appears, with reasonable certainty, that there was a violation of a criminal statute. We do not affirm that the words "assault and battery" would of themselves be sufficient. Not that, by any means; but we do affirm that the words, used as they are in that clause of the answer, reading, "while thus engaged in perpetrating said assault and battery, and while violently beating, bruising, choking and mal-

treating her, the said wife of his brother," are to be consid-
ered in determining the character of the violence used upon
the person of Mrs. Bloom.   The words have a settled mean-
ing quite as full and definite as the word " unlawful," and
it is but following the ruling in *Burk* v. *State, supra,* to give
them their well known meaning.  If the word " unlawful" had
been used, the substantial requisites of an indictment would
have been present.   *State* v. *Smith,* 44 Ind. 557.   It seems
to us that the words used, taken in connection with those
with which they are immediately associated, and in connection
with the clause contained in the concluding part of the an-
swer, which reads, "And this defendant says that by reason
of his said intoxication and of his said violation of the law in
committing such assault and battery, the said August Bloom
was then and there in the known violation of the laws of In-
diana," fully show that an offence punishable by the criminal
laws of the State was committed by the assured.   We do not
hold that the averments in the concluding part of the answer
control, but we do hold that in determining the whole tenor
and drift of the pleading they are proper for consideration.

The soundness of the decision in *Cluff* v. *Mutual, etc., Ins.
Co., supra,* upon the point immediately under discussion, is.
questioned in the well considered case of *Bradley* v. *Mutual,.
etc., Ins. Co.,* 45 N. Y. 422, and was denied in the same case
by the Supreme Court of New York.   It does seem a wide
stretch of judicial power to affirm that a clause reading, " Or
in case he shall die by his own hand, or in consequence of a
duel, or by reason of intemperance from the use of intoxica-
ting liquors, or by the hands of justice, or in the known viola-
tion of any law of these States, or of the United States, or of
the said provinces, or of any other country which he may be
permitted under this policy to visit or reside in, this policy
shall be void," refers solely to criminal laws.   If the words
employed are taken in their usual signification, it would seem
quite clear that death in the known violation of any law,
criminal or civil, would make the policy inoperative.   An

illustration was put by GROVER, J., in *Bradley* v. *Mutual, etc., Ins. Co., supra,* which goes far to show the unsoundness of the decision in *Cluff* v. *Mutual, etc., Ins. Co., supra:* "Again, suppose the death occurred from injury received while the assured was attempting to obtain, by force, the possession of a chattel of which another was in peaceable possession, the title to which was claimed by both, but which was really in the assured, the case would come within the proviso, for the reason that the risk was increased, and the death caused by the violation of law by the assured, although such law was the civil only, the deceased having committed no breach of the peace or any indictable offence." Suppose, as a further illustration, that the law prohibits a passenger from standing on the platform of a railway car while in motion, or that it prohibits persons from approaching within a specified distance of a blast about to be fired, would not a known violation of such a law increase the risk, and be within the letter and the spirit of the provision in the policy? On the other hand, it is not every violation of law which should absolve the company even though the law be a criminal one. Suppose a man, violates our law against profanity, and is shot while doing it, should that absolve the company from liability? Again, suppose a man violates our Sunday-law by fishing, and while committing the offence is shot and killed, would that relieve the company? In a late case, *Hatch* v. *Mutual Life Ins. Co.,* 120 Mass. 550 (21 Am. R. 541), a rule was declared which it seems difficult, if not impossible, to reconcile with that laid down in *Cluff* v. *Mutual, etc., Co., supra,* for it was held in the later case that where an assured submits to a surgical operation for the purpose of producing abortion, there can be no recovery upon the policy. It is true that the opinion puts the decision upon the ground of public policy, but when the real reason for the decision is reached, it will be found that it rests upon the ground that the act was in violation of the rights of the insurance company, for an act against public policy can not relieve the company unless it is one increasing the risk. If a

man should violate public policy by entering into an illegal conspiracy to prevent competition at a public sale, and this should lead to his death, we suppose no one would claim that because his act was against public policy, the insurance contract was avoided. Again, if an assured should enter into a conspiracy to corruptly control the acts of a government official, or should enter into a marriage brokerage contract, and these acts should lead to his death, it would be clear that the policy of insurance would not be rendered void. In our opinion the law is this: A known violation of a positive law, whether the law is a civil or a criminal one, avoids the policy if the natural and reasonable consequences of the violation are to increase the risk; a violation of law, whether the law is a civil or a criminal one, does not avoid the policy if the natural and reasonable consequence of the act does not increase the risk.

Whether the violation of law was the proximate cause of death, and whether it was an act increasing the risk, must in general be determined from the facts of the particular case. There must in all cases, whether the law violated be a criminal or a civil one, be some causative connection between the act which constituted the violation of law and the death of the assured. A man engaged in uttering counterfeit money might meet his death while so engaged, and yet there might be circumstances which would destroy the causal connection between the death and the violation of law, and in such a case it is clear that the company would not be relieved from liability. On the other hand, an assured might bring on his death while engaged in the violation of a civil law, as, for instance, in the case of an attempt to force an entrance into a man's house for the purpose of arresting him on civil process. Another illustration may be found in the case of a railway engineer who, in violation of law, neglects to sound signals and brings on a collision in which he perishes, and a hundred examples are supplied in cases of collisions at sea or on navigable streams, brought about by a violation of maritime

laws. It would not be difficult to multiply examples proving that the rule must be that the known violation of a positive law relieves the company where the act constituting the violation is the proximate cause of death, whether the positive law violated be a civil or a criminal one.

The act of the assured in this case was the proximate cause of his death within the meaning of the law. A man who makes a violent assault upon a woman puts his own person in danger, for a father, a husband, or a child may interfere to protect the assailed woman, and may overcome the assailant by force. Strangers not only may interfere to protect the person violently assaulted, but are, in strict law, under a duty to interfere. The natural result of such an illegal act as that of the assured, therefore, was to bring his person into danger, and as death resulted his own act was the proximate cause. It may well be doubted whether an assured who violently assaults another does not cause a forfeiture, even though the rescuer uses excessive force; but that point we need not decide, for the interference in this instance was a lawful one. While the unlawful act of the assured must tend in the natural line of causation to his death, in order to work a forfeiture, it is not necessary that the act should be the direct cause, nor that the precise consequences which actually followed could have been foreseen. It is enough if the act is unlawful in itself, and the consequences flowing from it are such as might have been reasonably expected to happen, for, in such a case the ultimate result is traced back to the original proximate cause. *Terre Haute, etc., R. R. Co.* v. *Buck,* 96 Ind. 346; *Cincinnati, etc., R. R. Co.* v. *Eaton,* 94 Ind. 474; *Dunlap* v. *Wagner,* 85 Ind. 529 (44 Am. R. 42); *Binford* v. *Johnston,* 82 Ind. 426 (42 Am. R. 508); *Billman* v. *Indianapolis, etc., R. R. Co.,* 76 Ind. 166; S. C., 40 Am. R. 230. In the case of *Cluff* v. *Mutual, etc., Co., supra,* the decision was, that where the assured made an assault upon another, and the person assaulted killed him, the policy was forfeited. The same general doctrine was maintained in *Bradley* v.

*Mutual, etc., Ins. Co., supra,* but it was held that where there was any conflict of evidence, the question of whether the death was the natural result of the wrongful act must be left to the jury. In the case of *Insurance Co.* v. *Seaver,* 19 Wall. 531, the assured was driving in a race, a collision took place, he leaped from his sulky and was killed, and the court held that death was proximately caused by the unlawful act of racing. The subject received consideration in *Miller* v. *Mutual Benefit Ins. Co.,* 34 Iowa, 222, where the assured, while suffering from a fit of *delirium tremens,* escaped from his keepers, ran out into the street in very inclement weather, and, by the exposure, brought on another form of disease which was the immediate cause of death. The court held that the proximate cause of death was the excessive use of intoxicating liquor. But there is really no reason for endeavoring to find insurance cases, for the fundamental principle must be the same whether the contract is one of insurance or an ordinary commercial agreement. The fundamental principle is as old as the "Squib Case" on the civil side of the common law, and on the criminal side as old at least as the time of Sir Matthew Hale. 1 Hale P. C. 428 ; 1 Hawk. P. C. 93 ; *Kelley* v. *State,* 53 Ind. 311 ; *Harvey* v. *State,* 40 Ind. 516 ; *Terre Haute, etc., R. R. Co.* v. *Buck,* 96 Ind. 346, auth. p. 350.

Courts can not be ignorant of the nature of men, and must attribute to them the ordinary passions and weaknesses inherent in human nature. It has been expressly adjudged that courts may presume that domestic animals will act in conformity to their usual propensities and habits, and surely there is stronger reason for extending this principle to beings of intelligence, reason and affections. Wharton Neg., sections 100, 107 ; *Billman* v. *Indianapolis, etc., R. R. Co., supra.* It has, indeed, been laid down by respectable authority that notice will be taken of the habits of men acting in masses, and if this be true, it must also be true that notice will be taken of what an ordinary man would likely do under a known state of affairs. Wharton Neg., section 108. These consid-

erations lead to the conclusion that a man who beats and maltreats another's wife may reasonably expect the husband to defend her without being careful to select the means of defence, or to nicely weigh the degree of force. To expect a husband to act coolly and with careful circumspection in such a case is to expect an unreasonable thing. The probability is that the husband will in such a case use force, and this makes it probable that the one who assaults the wife will encounter force at the hands of the husband, and what is probable is, in legal contemplation, to be expected. *Billman* v. *Indianapolis, etc., R. R. Co., supra,* and authorities cited. If, therefore, an assured does assault another's wife, he does an unlawful thing which he must expect will bring upon him violence from the husband, and if this force leads to death, then the proximate cause of death is the unlawful act which provoked the use of violence.

The violation must be a known one, and we are inclined to think that the law violated must be a known one, that is, must be one of which the violator has, or should have, actual knowledge. But there are many things of which no man can be ignorant, and among the things of which no one can be ignorant is, that it is against the law to commit murder, to steal, or to violently beat another. We can not doubt that the beating of Mrs. Bloom was an act known by the assured to be a violation of law.

The fact that the assured was intoxicated when he committed the assault and battery upon his brother's wife does not change the law. Drunkenness is no excuse for crime. *Goodwin* v. *State,* 96 Ind. 550, and authorities cited. A man who voluntarily makes himself drunk is in a measure responsible for his own irresponsibility. But, waiving this consideration, the degree of intoxication does not appear to have affected the mental capacity of the assured, and the presumption here is, as in all cases, that the mental condition was a normal one.

There is no force in the proposition that the assured did not lose his life in a known violation of law, but in conse-

quence of the violation. The cause of the cause is in law sufficient, and the cause of the cause of death was the blow given while the assured was in the act of violating the law, and it is not material whether death did or did not immediately ensue. *Terre Haute, etc., R. R. Co.* v. *Buck, supra.*

What we have said disposes of all the questions in the case, and it is not necessary to examine the special finding.

Judgment affirmed.

Filed Oct. 28, 1884.