MARY E. GRIFFIN, PLAINTIFF IN ERROR, V. WESTERN MUTUAL BENEVOLENT ASSOCIATION, DEFENDANT IN ERROR.

1. **Insurance:** DEATH OF INSURED ENGAGED IN VIOLATING LAW. One G., who had a certificate of insurance on his life in favor of his wife, with an accomplice went into the treasury department of the state in the daytime and demanded money belonging to the state and was given five hundred dollars. He then left the department and had nearly reached the outer door of

the capitol, when a policeman, previously placed in a passage way but in the rear, commanded him to halt, and at the same instant fired and killed G. The certificate of insurance above referred to contained a provision that if the insured should " die while violating any law," etc., all rights under the certificate should be forfeited. *Held*, That as G. had obtained the money, and was endeavoring to escape when he was killed, that he was not at the instant of death violating any law, and there was no forfeiture of the certificate.

2. ———: STIPULATION FOR JUDGMENT. Where the parties in effect stipulate that in case a recovery can be had on a certificate of insurance the amount will be seven hundred dollars, and the court so finds, the finding will not be disturbed.

ERROR to the district court for Lancaster county. Tried below before HAYWARD, J.

*R. D. Stearns* and *Hamilton & Trevitt*, for plaintiff in error.

*L. W. Colby* and *Griggs & Rinaker*, for defendant in error.

MAXWELL, CH. J.

This cause was submitted to the district court on the following agreed statement of facts:

"It is agreed by the parties herein that the said James W. Griffin had been a short time prior to the day of his death, on the 28th of February, 1885, solicited to enter into a conspiracy to rob and defraud the state treasury of Nebraska, it being represented to the said James W. Griffin that the said state treasurer of Nebraska was knowing to, and concerned in said conspiracy, and that the plan and detail of said conspiracy was to make a raid upon said state treasury and take and carry away certain moneys belonging to the state of Nebraska, which the state treasurer was to conveniently leave where said money could be conveniently taken by said conspirators, with simply a show of force and arms, and the said state treasurer was then to

report a larger sum of money than was taken by said conspirators and have the same allowed to him, and the extra amount so obtained by the state treasurer was to be divided up among the conspirators.    Upon these representations the said James W. Griffin was induced to enter upon said conspiracy and did enter upon the same.    On the other hand, some days before the 28th of February, 1885, the matter was made known and represented to the state treasurer of Nebraska as a veritable plot to rob the state treasury by force by the said James W. Griffin and others associated with him, and the said treasurer believed said representations to be true, and that it was his duty to take proper precautions against such plot and its successful perpetration.    The proper state authorities of the state of Nebraska, having been informed of the time of day and the manner and the number of persons that would be engaged in said plot, and attempt to consummate the same, and when and where such attempt would be made to rob the said treasury by the said James W. Griffin and his associates, employed five persons, who were all fully armed and authorized to resist such attempt, two being placed and concealed in the inner room of the treasurer's office so as to observe what transpired, one in the hallway which gave access to the treasurer's office, one in the basement under the treasurer's office, and one, as a supposed confederate of the said James W. Griffin and his associate, was to enter said treasurer's office and assume to act with the said James W. Griffin in the perpetration of said design and attempt aforesaid, and who was also to dampen the powder in the cartridges of the revolvers of the said conspirators so that the same would not explode, and who did so dampen the powder as aforesaid.

"On said 28th of February, said James W. Griffin, with one real associate and with the man employed as aforesaid, pursuant to the said conspiracy and plans on their part as aforesaid, entered the state treasurer's office, and drew their

revolvers upon and demanded of the state treasurer the moneys belonging to the state in his possession.    Pursuant to said demand of said James W. Griffin and his associates, the state treasurer delivered to the said James W. Griffin the sum of five hundred dollars of the money of the state of Nebraska, then and there in his possession, and the said Griffin and his associates took and received the sum and *started to effect their escape, with the said money.*    The said Griffin passing out into the hallway, where one of the watchmen so employed by the state authorities was stationed, and entering said hallway in plain view of said watchman and about twenty feet distant from him, and thence passing westward, not seeing said watchman, to the west door of the capitol of the state of Nebraska, when said watchman called said Griffin to 'Halt,' and simultaneously fired upon him with a double barrelled shotgun loaded with 'BB' shot, which took effect in said Griffin's back, and as said Griffin staggered forward said watchman fired with said gun so loaded again, which shot took effect also in said Griffin's back, from the effect of which said shot and wounds caused by said shot so given the said Griffin died within two hours thereafter.

" The said James W. Griffin was a cripple with only one natural leg, the other being an artificial stump or peg, which fact was known to said watchman, and said Griffin was incapable of speedy running.    That afterward said watchman was duly indicted for such killing of Griffin, tried, convicted, and sentenced to the state penitentiary of Nebraska.    That satisfactory proofs of the death of the said James W. Griffin were made, excepting whether said Griffin died while violating any law of the state of Nebraska, or not.

" That the foregoing facts all transpired at Lincoln, Lancaster county, Nebraska.

" That an assessment on the membership of the defendant made at the time of the death of said James W. Griffin would have realized the sum of seven hundred dollars."

On the trial of the cause the court below found the issues in favor of Mrs. Griffin, and rendered judgment in her favor for the sum of seven hundred dollars.

This is an action upon a certificate of membership issued by the Western Mutual Benevolent Association to James W. Griffin, the plaintiff Mary E. Griffin being the beneficiary named in the certificate.

The certificate contains the following condition :

"The said member forfeits all rights in said association and this certificate of membership for any of the following causes :—

"Sixth. If the member shall die while violating any law of any nation, state, or province."

The answer set up the defense that the member died under circumstances whereby the policy was avoided by virtue of the condition above stated.

Two questions are presented for determination. *First*, Does the agreed statement of facts show that Griffin was killed while violating a law of the state? and *Second*, If not, is Mrs. Griffin entitled to recover a greater sum than seven hundred dollars?

It will be observed that the condition named is, "if a member shall die *while violating* any law," etc. That is, in the actual violation of a law. Now suppose Griffin had robbed the state treasury, and had left it, and was about to emerge from the building when he was killed, can it be said that at the time of his death he was violating any law of the state? We think not. Suppose that instead of robbing the treasury he had made an assault upon the treasurer in his office, or committed a battery upon him and had left the treasury department and nearly reached the outer door of the capitol when he was killed, it will not be contended that at the time of his death he was violating the law. So in this case the act of Griffin in obtaining money from the treasury had been completed and he was then endeavoring to make his escape. Griffin therefore

was not killed while violating the law, and there is no forfeiture of the certificate on that ground.

2d. That the plaintiff is entitled to recover more than seven hundred dollars. In the agreed statement of facts it is practically agreed that Mrs. Griffin is entitled to one assessment amounting to seven hundred dollars. The claim for a larger sum is evidently an afterthought, and need not be further considered. The judgment of the district court is clearly right and is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.