INSURANCE COMPANY *v.* BENNETT.

(*Jackson.*   May 9, 1891.)

1. LIFE INSURANCE.   *Presumption in case of violent death against suicide and murder.   Charge of Court.*

In suit upon a life-policy there was positive proof of insured's violent death by pistol-shot through the heart, but no direct proof as to the manner of his death, that being left as a matter of inference from a variety of circumstances.

*Held:* That, upon this state of facts, the Court did not err in charging as follows: "The presumption of law is that Bennett [the insured] did not commit suicide, and was not murdered," the Court adding: "Either of these presumptions may be overcome by facts and circumstances which establish the contrary;" and saying further to the jury: "In determining what facts are proven in the case, you should carefully consider all the evidence given, with all the circumstances of the subject-matter of the inquiry as detailed by the witnesses." (*Post, pp. 259–261.*)

Cases cited and approved: 47 N. Y., 52; 127 U. S., 661.

(See Persons *v.* State, *post, p. 291.*)

2. SAME.   *Construction of clause in policy requiring direct and positive proof of cause of death.*

In construction of clause in life-policy providing that "the insurance shall not be held to extend to any case of death, the nature, cause, or manner of which is unknown or incapable of direct and positive proof," it is not error for the Court to charge, in a case where there is no direct, but much circumstantial, evidence of the manner of the insured's death, that "the jury may find any fact proven which may rightfully and reasonably be inferred from the evidence." (*Post, p. 262.*)

Case cited and approved: 127 U. S., 661.

3. SAME.   *Construction of clause in policy limiting liability to injuries effected by external, violent, and accidental means.*

In suit upon a life-policy which restricts the insurer's liability to injuries effected by external, violent, and accidental means, but is silent as to

*intentional* injuries, it is not error for the Court to refuse to instruct the jury, at defendant's request, that the plaintiff could not recover if the insured "died from a pistol-shot wound received at the hands of a person who *intended* to kill him," and it is immaterial in such case whether there was or was not evidence tending to show an intentional killing. If there was no such evidence, this request, though correct, was properly refused. But the request is not the law. (*Post, pp. 263, 264.*)

4. SAME. *Same. What injuries are effected by "accidental means."*

Injuries are effected by accidental means within the meaning of this clause of the policy, though intentionally inflicted, if they are such as the insured could not have reasonably expected or anticipated. (*Post, pp. 263, 264.*)

Cases cited and approved: 104 Ind., 133; 87 Ky., 300.

5. SAME. *Construction of clause in policy exempting insurer from liability if insured was killed in quarrel.*

In construction of clause in life-policy providing that "if death occurs from assault provoked by quarreling no recovery can be had," it is not error for the Court to charge that "if the jury finds from the evidence that Bennett [the insured] died from a pistol-shot wound received from a pistol in the hands of a person who intended to wound or kill him, brought about by a quarrel which he provoked, and from which he might reasonably expect bodily injury, then the plaintiff cannot recover; and, on the other hand, if he could not reasonably have expected anger to be provoked and injury therefrom, then he can recover." (*Post, pp. 264–266.*)

6. SAME. *Same. When death is not within this clause.*

The death of the insured does not fall within the exception contained in this clause of the policy unless it occurred as the result of a quarrel provoked by himself, and of such serious nature that he might reasonably have expected that anger would be aroused and violence inflicted. It is not every trivial dispute that is a quarrel within the meaning of this clause. (*Post, pp. 264–266.*)

7. SAME. *Construction of clause in policy exempting from liability for injury resulting from unlawful act.*

In suit upon life-policy that exempts insurer from liability for injuries to the insured while "engaged in, or in consequence of, some un-

17—6 P

---
Insurance Company *v.* Bennett.
---

lawful act," it is not error for the Court to refuse to charge, upon defendant's request, that the plaintiff could not recover, if, at the time insured was killed by a pistol-shot through the heart, he was living with a woman in a state of fornication, there being no proof that such fornication was of such notoriety as to constitute a violation of the criminal laws, and there being no suggestion of any causative connection between the fornication and insured's injuries. (*Post, pp. 266–270.*)

8. SAME.   *Same.   What unlawful act exempts from liability.*

The "unlawful act" contemplated by this clause is one that constitutes a violation of the criminal laws, not a mere breach of some obligation of morality or some rule of policy. Fornication, unless attended with such circumstances as give it publicity and notoriety, is not a misdemeanor, though immoral, and is not, therefore, an "unlawful act" within the meaning of this clause. (*Post, pp. 266–270.*)

Cases cited and approved: 95 Mo., 506; 13 Allen, 308; 45 N. Y., 432; 2 Yer., 482; 1 Swan, 136; 8 Lea, 47.

9. SAME.   *Same.   Same.*

And the unlawful act contemplated by this clause is one from which the insured's injury results as a natural and necessary consequence. (*Post, pp. 266–270.*)

Cases cited and approved: 97 Ind., 478; 13 Allen, 308; 120 Mass., 550; 19 Wallace, 531.

---
FROM SHELBY.
---

Appeal in error from Circuit Court of Shelby County.   L. H. ESTES, J.

TAYLOR & CARROLL for Insurance Company.

L. & E. LEHMAN for Bennett.

SNODGRASS, J.   Action   on   accident   insurance policy for $5,000 issued by plaintiff in error on life of A. Bennett; trial before a jury; verdict and judgment in favor of plaintiff for amount of policy and interest; appeal and assignment of errors by defendant.

Bennett was found dead in a house on Causey Street, Memphis, Tennessee, about ten o'clock A.M. on March 31, 1886.   He had been dead apparently about a half-hour, the body being still warm. The house contained three rooms—the front, a bedroom; the middle, a dining-room; and a backroom applied to no special purpose so far as the evidence discloses, but having a place of exit—a door—opening into a back-yard and by an alley. Entering the dining-room from the front, the door was on the left side of the room, and it was in line with and directly opposite the door between that and the back-room and the back-door mentioned.

Bennett was found lying between the two doors in the back-room dead, with a pistol-shot through his heart.   Neither his flesh nor clothing was powder-burned.   His hat and umbrella were lying near him.

In the dining-room opposite, mortally wounded, and speechless it would seem from absence of any effort to prove that she ever spoke after found, was a woman known as Ida Bennett, with whom Bennett is shown to have had illicit relations, and who had been occupying the house.   Her flesh

and clothing were powder-burned, and she had a pistol-shot wound in the right side, of which she subsequently died. Near her, toward the front of the house (she lying rather across the space between the two doors of the dining-room), was found a six-shooting pistol, but whether loaded or unloaded does not appear; nor does it appear whether the wounds made in the two bodies were made by this, or even of a pistol carrying the same sized ball.

In relation to Bennett's connection with the woman, and the house in which both were found dead and wounded, it was shown that he had some time before met her at a house of ill fame; that she subsequently became his mistress, and lived with him as such—whether this was open and notorious does not appear; that the day before the killing Bennett, who had been away from the city for some time, returned to it, and asked a friend how this woman had been conducting herself while he was away, and whether she had been true to him, expressing himself as tired of her and intending to break up his relations with her, and saying that when she went home next summer to see her people that she should remain there, and that would be the end of their relations; said he wanted to quit her because his relations with her were bringing him into disrepute, and that when he met his young lady acquaintances he could not look them in the face.

The witness who gave this evidence testified

that Bennett was a peaceable, quiet, timid man, and had a good reputation for peace; that Bennett did not intimate that he had used any violence toward the woman, and the witness stated no fact or declaration from which an intention to do so could be inferred.

This, so far as appears, was the last time Bennett was seen by any living witness until he was discovered dead, and it is upon the facts and circumstances thus stated that the verdict and judgment are based. The objections to the judgment will be considered, as near as possible, in the order of the assignment of errors.

The first of this assignment is that the Court erroneously charged: "The presumption of law is that Bennett did not commit suicide, and was not murdered." The Court did so charge, adding, however, that "either of these presumptions may be overcome by facts and circumstances which establish the contrary;" and elsewhere saying to the jury: "In determining what facts are proven in the case, you should carefully consider all the evidence given, with all the circumstances of the subject-matter of the inquiry as detailed by the witnesses."

The charge was a correct statement of the law. *Mallory* v. *Ins. Co.*, 47 N. Y., 52; *Ins. Co.* v. *McConkey*, 127 U. S., 661 (Lawyers' Co-op. Ed., 308).

It is argued that this application of the law is erroneous, because deceased must have either killed himself or been killed by the woman, in view of the circumstances detailed. But this does not

follow. Both may have been killed by another or others. There is a great probability that one may have shot the other, and then himself or herself— the latter is most probable—but there is no presumption of such fact, and the presumptions were as stated by the Circuit Judge.

The second error assigned is that the Court charged: "The jury may find any fact proven which may rightfully and reasonably be inferred from the evidence."

The exception is based upon a condition of the policy that "the insurance shall not be held to extend to any case of death the nature, cause, or manner of which is unknown or incapable of direct and positive proof."

But the charge was not in contravention of law, nor of the terms of the contract. The requirement of direct and positive proof of the nature, cause, or manner of death did not make it necessary to establish the fact and attendant circumstances of death by persons actually present when the insured received the injury which caused his death. The two principal facts to be established were external violence and accidental means producing death. The first was established when it appeared that death ensued from a pistol-shot wound through the heart of deceased. The evidence on that point was direct and positive, as much so as if it had come from one who saw the pistol fired; and the proof on this point was none the less direct and positive because supple-

mented or strengthened by evidence of a circum-
stantial character (*Insurance Company* v. *McConkey*,
127 U. S., 661), or, we add, of an inferential or
presumptive character.

The question as to "accidental means" of death
necessary to be shown, will be considered under
the fifth assignment of error in this connection,
where it most properly falls, and which arises
upon refusal of the Circuit Judge to charge, as
requested, that "if the jury find from the evidence
that Bennett died from a pistol-shot wound, re-
ceived at the hands of a person who *intended* to
kill him, the plaintiff cannot recover," based upon
a provision in the policy that only covers injuries
effected by external, violent, and accidental means,
and argument that if the killing was intention-
al on the part of the person shooting him, it
was not *accidental* within the meaning of the
policy.

It may be remarked in the first place that,
there being no evidence of an intentional killing,
and no presumption of it, the Court was not re-
quired to give this charge; but, passing that, we
are of opinion that where, as in this case, there
was no provision in terms against a claim under
the policy if the death was caused by *intentional
injury inflicted by the insured or any other person*
(as was the condition of the policy considered in
the McConkey case cited, and the Hutchcraft case
to be cited), but merely a provision that the policy
only covered *injuries* effected through "accidental

means," then an injury not anticipated, and not naturally to be expected by the insured, though intentionally inflicted by another, is an accidental injury within the meaning of the contract. We content ourselves with citing the authorities on this point without repeating the discussion there indulged. Am. & Eng. Ency. of Law, Vol. I., pp. 88, 89, and notes; *Supreme Council* v. *Garrigue,* 104 Ind., 133; *Hutchcraft* v. *Insurance Company,* 8 South-western Rep., 570 (87 Ky., 300).

There are cases in which it is assumed the contrary view is taken; but, so far as we have found on examination, the decisions are put upon provisions against liability where insured is *intentionally killed by another.* They are not to be extended, and are not in conflict with those cited, which we hold state the true rule. See Am. Law Reg., January, 1889, pp. 42 to 56.

These authorities and the views announced on the assignments discussed, dispose of the fourth and sixth assignments, and they need not be further noticed.

The third assignment is that the Court erred in charging that "if the jury finds, from the evidence, that Bennett died from a pistol-shot wound received from a pistol in the hands of a person who intended to wound or kill him, brought about by a quarrel which he provoked, and from which he might reasonably expect bodily injury, then the plaintiff cannot recover; and, on the other hand, if he could not reasonably have ex-

pected anger to be provoked and injury therefrom, then he can recover."

The exception to this charge is that the "policy provides in distinct terms" that "if death occurs from assault provoked by quarreling no recovery can be had," and that the Circuit Judge misled the jury by stating the proposition with the qualification attached as indicated.

As to this, we say that inasmuch as there was no evidence of any quarrel, provoked by him or unprovoked, and none from which one may necessarily be inferred, it does not appear that plaintiff in error was injured by this charge if erroneous. But if the evidence that the insured was tired of this woman, and intended to get rid of her and terminate his relations with her (an event to have been postponed until the ensuing summer, according to the testimony), in connection with the circumstances and surroundings of the parties in life and death, be sufficient to justify the assumption that there might have been a quarrel between them at the time of the killing, and the charge therefore pertinent, and, if erroneous, and injurious to defendant, we may properly determine its correctness or incorrectness; and we are of opinion that it was not erroneous.

Such a provision must have a reasonable construction. It cannot be held to mean that every frivolous controversy which might, in some sense, be termed a "quarrel," although it was not a dispute or quarrel from which the insured might

reasonably have expected anger to be provoked or injury to result, is within the meaning of the term used in the policy. There being no evidence of a quarrel in fact with any one, and the only apparent probability of such a thing having occurred being that some dispute, trivial or serious, with this woman might have happened, the Circuit Judge seems to have addressed himself to this possibility, and, in substance and effect, to have said: If you believe deceased provoked such a serious quarrel with her as that he might reasonably have expected bodily injury, then plaintiff cannot recover; but you are not to refuse to find in favor of plaintiff merely because the woman may have provoked a quarrel with the insured and then killed him, or he provoked a frivolous or seemingly safe dispute with her, a quarrel of a nature in which he could not reasonably have expected anger to be provoked and injury therefrom, and was killed by her, having no reason to anticipate violence. We think this a sound construction of the law of the contract as applied to the facts of the case.

The seventh assignment of error is not well taken. It is upon the refusal of the Court to charge, as requested, that, "if the jury finds that deceased, Bennett, and the woman were living together in a state of fornication, and that Bennett was killed in consequence of and while that relation continued, there can be no recovery under the policy, because the insurance does not extend

to or cover injuries received while engaged in, or in consequence of, any unlawful act."

In this connection it is averred in the assignment that fornication is an unlawful act, and the policy is correctly stated to provide that no recovery can be had upon it when the injury may have happened while the insured was engaged in or in consequence of some unlawful act.

A complete answer to this is that it states no legal proposition. Fornication or "living in a state of fornication," however immoral and wrong, must be accompanied with circumstances of notoriety or publicity to make it an unlawful act. The law takes no cognizance of the offense until it becomes open and notorious lewdness. 2 Yer., 482; 1 Swan, 136; 8 Lea, 47.

Such a cohabitation, therefore, only becomes a recognized unlawful act when it is open and notorious, and of this there was no assumption in the request or proof in the record.

But again, passing this question, if it were true that such association *per se* was an unlawful act, it would not follow that plaintiff could not recover. In order to defeat a recovery because of such provision, there must appear a connecting link between the unlawful act and the death. It is not sufficient that there was an unlawful act committed by the insured, and that death occurred during the time he was engaged in its commission. There must be some *causative* connection between the act which constituted the violation of the law

and the death of the insured. *Bloom* v. *Insurance Company*, 97 Ind., 478.

Illustrating, it is aptly said in the same case: "Suppose a man violates the law against profanity and is shot while so doing, should that absolve the company from liability?" And see to same effect 45 N. Y., 432; 13 Allen, 308.

Numerous illustrations of similar character might be presented in which the act, however unlawful, has no relation to the death as its cause or contributing element, but they need not be multiplied. There is no pretense that the death was caused directly by any such unlawful act of deceased or resulted as a natural consequence thereof. Nor does it appear from the evidence that he was engaged in any act from which danger, much less death, might have been expected.

The provision of the policy excluding liability for injury received by the insured while committing an unlawful act, refers to such injuries as may happen as the necessary or natural consequences of the act—as its probable and to be anticipated consequences; and the reference to injuries received "in consequence of any unlawful act" is to those injuries which arise out of or flow naturally from the act committed as its effect or resulting consequence. Attempts to murder a particular individual, in which lawful resistance or consequent punishment may cause or occasion death; attempts to murder or injure or rob the wife or child or parent of another, in which injury

might be expected from defense of that other; submitting to an operation for abortion; engaging in a horse-race, where horse-racing is unlawful and where the injury results during the race, or in the effort to stop one of the horses in its progress, and the like, are acts falling within the terms of the policy, and illustrate what is meant by "injuries received while insured is engaged in or in consequence of an unlawful act." *Cliff* v. *Insurance Company*, 13 Allen, 308;. *Hatch* v. *Insurance Company*, 120 Mass., 550; *Bloom* v. *Insurance Company*, 97 Ind., 478; *Insurance Company* v. *Seaver* (L. Co-op. Ed., 155), 19 Wallace, 531.

The law, we hold, is properly and well settled that such provision does not extend to exempt the insurer from liability because of the infraction by the insured of law when the act has no connection with the injury, or when the act is in violation of some obligation of morality or rule of policy not recognized or adopted as law. It has been held, too, that the unlawful act committed must be criminal, and not a mere violation of a civil right or infraction of a law not criminal. 95 Mo., 506; 13 Allen, 308; 45 N. Y., 432.

The contrary has been held so far as it relates to the violation of a positive rule of civil law, which proximately leads to the injury, when it is such an act as increased the risk and naturally led to the death. 97 Ind., 478. But how this is we need not decide. It is sufficient to say the

Insurance Company *v.* Bennett.

act alleged does not fall within the terms of the policy, for reasons stated.

The eighth and last assignment of error embraces those stated and generally that the verdict is against the evidence.

We hold the contrary, and the judgment is affirmed with cost.