SOUTHERN INS. CO. *v.* MARY GRAHAM.*

*(Nashville.    December Term, 1925.)*

1. **INSURANCE.**   Causal connection between death from burns and unlawful transportation of liquor held not to exist so as to bar recovery.

Where insured's clothes became soaked with gasoline while examining his car, and clothes caught fire while he was lighting a cigarette after leaving the car in which he had transported liquor, there was no causal connection between death and unlawful transportation of liquor, and hence it did not bar recovery, under accident policy denying recovery of benefits caused by or while violating the law.   (*Post, pp.* 581, 582.)

2. **INSURANCE.**   Provision in accident policy denying benefits ''caused by or while violating the law,'' requires causal connection between unlawful act and death.

Under provisions of accident policy that "insured shall not be entitled to benefits caused by or while violating the law," there must be a causal connection between the unlawful act and death.   (*Post, pp.* 582-585.)

Cases cited and approved: Bloom v. Ins. Co., 97 Ind., 478; Bradley v. Ins. Co., 45 N. Y., 432; Cluff v. Ins. Co., 13 Allen, 308; Hatch v. Ins. Co., 120 Mass., 550; Ins. Co. v. Seaver, 19 Wall., 531; Freeman v. Mercantile Mut. Acc. Assn., 156 Mass., 351; Duran v. Ins. Co., 22 A., 530.

Case cited and distinguished: Ins. Co. v. Bennett, 16 S. W., 725.

*Headnotes 1. Life Insurance, 37 C. J., Section 296; 2. Life Insurance, 37 C. J., Section 296.

FROM DAVIDSON.

Error to the Circuit Court of Davidson County.—Hon. E. F. Langford, Judge.

Wm. Hume, for Insurance Co.

W. E. Norvell, Jr., for Graham.

Mr. Justice McKinney delivered the opinion of the Court.

This case was submitted upon the following stipulation:

"It is agreed that the following facts are true and that same may be considered by the court in deciding the case in lieu of the introduction of formal proof:

"That Harry Graham took out a policy of insurance, No. 6651, in the Public Life & Accident Insurance Company of Tennessee on November 27, 1922, which is attached hereto and made a part hereof as Exhibit A, and that said policy was in full force and effect on November 28, 1923, when said Harry Graham died. Harry Graham left surviving him, as his widow, Mary Graham, the plaintiff, who is the beneficiary under said policy.

"That Harry Graham, on November 26, 1923, made a trip in an automobile to a point near Kingston Springs, Tenn. That several friends accompanied him from Nashville and that said trip was a sight-seeing or pleasure trip, and friends desiring to see a still in operation, and the said Harry Graham took them on this ride for the purpose of showing them such a still. That on one or more previous occasions the said Graham had hauled liquor in said automobile.

"That on the trip in question, after seeing said still,

the said Graham decided to bring some liquor back to Nashville and put some liquor, contained in four five-gallon kegs, in the car. On the return when the party got to Kingston Springs, it was suggested that they eat a meal at a restaurant there. Some of the party went into the restaurant and when Graham got out of the car he noticed from the fumes of gasoline that the gasoline tank in the rear was leaking. He got under the car to ascertain the exact point of the leak and endeavored to stop same. While under the car, he got some gasoline on his clothing. It was dark at the time and he did not notice this fact. He got up from the ground and left the automobile to go to the restaurant. When about twenty feet from the automobile, he struck a match to light a cigar or cigarette. The flame of the match, by accident, came in contact with the vapor of the gasoline, on his clothes, his clothing was ignited, and he was badly burned, from the effects of which burns he died two days later at a hospital in Nashville.

"He was not under the influence of liquor at the time of the accident, but was brought immediately to the hospital at Nashville, and the doctor who there attended him. Dr. E. M. Sanders, discovered no evidence of drinking at all, and, both from the rational and normal conduct on the part of the said Graham and lack of odor on his breath, would testify that said Graham had not been drinking to the best of his knowledge and belief, and it is agreed that said Sanders would so testify if called, and that this statement may be considered as his testimony.

"That the defendant, Southern Insurance Company, is a corporation engaged in the insurance business at

Nashville and elsewhere, and, since the above-mentioned policy was issued, has purchased the assets and business, and has assumed the liabilities of said Public Life & Accident Insurance Company of Tennessee.

"That proper proof of death was made. That proper demand was made more than sixty days prior to the institution of suit, and the defendant failed and refused to pay the amount specified in said policy for accidental death to the beneficiary.

"That the beneficiary employed W. E. Norvell, Jr., an attorney, to bring suit on said policy. That said Norvell brought suit in a magistrate's court. That the case was there continued two or three times by the defendant and the case continued once thereafter. That W. E. Norvell, Jr., intends to charge the beneficiary twenty-five per cent. of the recovery and that this is a reasonable fee for his services."

Upon the foregoing facts it is insisted that the following cause in the policy bars a recovery, to-wit:

"14. The insured shall not be entitled to any benefits under this policy caused by or while violating the law."

For the defendant in error it is said that the death of insured was neither caused by a violation of law, nor did it occur while he was actually violating the law, but that, if wrong in this, still a recovery can be had, because there is no causal connection between the unlawful act and the death of insured.

It is not insisted, and could not be under the facts of this case, that such causative connection exists. Insured was twenty feet from his car on his way to the restaurant when the accident happened, which was caused by a

lighted match coming in contact with gasoline on his clothes. The accident was not caused as a result of the transportation of whisky, for it would have happened even though the car was empty.

It appears from the stipulation that these parties were on a pleasure trip, and, as an incident thereto, the insured placed whisky in his car; but the transportation of the whisky in no wise contributed to or was connected with the accident.

Practically all of the authorities hold, in construing similar provisions in accident policies, that such causative connection must exist.

In *Insurance Company* v. *Bennett,* 16 S. W., 725, 90 Tenn., 267, 25 Am. St. Rep., 685, in construing a similar provision, this court said: "But again, passing this question, if it were true that such association *per se* was an unlawful act, it would not follow that plaintiff could not recover. In order to defeat a recovery because of such provision, there must appear a connecting link between the unlawful act and the death. It is not sufficient that there was an unlawful act committed by the insured, and that death occurred during the time he was engaged in its commission. There must be some causative connection between the act which constituted the violation of the law and the death of the insured. *Bloom* v. *Insurance Company,* 97 Ind., 478 [49 Am. Rep., 469.]

"Illustrating, it is aptly said in the same case:

" 'Suppose a man violates the law against profanity and is shot while so doing; should that absolve the company from liability?' And see to same effect. [*Bradley* v. *Insurance Co.,* 45 N. Y., 432 [6 Am. Rep., 115; *Cluff* v. *Insurance Co.*], 13 Allen [Mass.], 308.

"Numerous illustrations of similar character might be presented in which the act, however unlawful, has no relation to the death as its cause or contributing element, but they need not be multiplied. There is no pretense that the death was caused directly by any such unlawful act of deceased, or resulted as a natural consequence thereof; nor does it appear from the evidence that he was engaged in any act from which danger, much less death, might have been expected.

"The provisions of the policy excluding liability for injury received by the insured while committing an unlawful act refers to such injuries as may happen as the necessary or natural consequences of the act—as its probable and to be anticipated consequences; and the reference to injuries received 'in consequence of any unlawful act' is to those injuries which arise out of or flow naturally from the act committed as its effect or resulting consequence. Attempts to murder a particular individual, in which lawful resistance or consequent punishment may cause or occasion death; attempts to murder or injure or rob the wife or child or parent of another, in which injury might be expected from defense of that other; submitting to an operation for abortion; engaging in a horse race, where horse racing is unlawful, and where the injury results during the race, or in the effort to stop one of the horses in its progress, and the like, are acts falling within the terms of the policy, and illustrate what is meant by 'injuries received while insured is engaged in or in consequence of an unlawful act.' [*Cluff*]. *Cliff* v. *Insurance Company*, 13 Allen, 308; *Hatch* v. *Insurance Company*, 120 Mass., 550 [21 Am. Rep., 541]; *Bloom* v. *Insurance Company*, 97 Ind., 478 [49 Am. Dec.,

469]; *Insurance Company* v. *Seaver* [22 L. Ed., 155], 19 Wall., 531.''

We are unable to agree with counsel that the above statement was *dictum*.

In 17 A. L. R. 1006, will be found a long list of cases from the supreme court of the United States and State courts of last resort approving the rule of causal connection. No cases are cited to the contrary.

The rule is very well stated in 4 Cooley's Briefs on Insurance, pp. 3150, 3151, as follows:

''Not only must there be a causative connection between the violation of law and the death, but such connection must be direct, and not indirect; proximate or immediate, and not remote. Where different forces and conditions concur in producing a result, it is often difficult to determine which is properly to be considered the cause. But the maxim, '*Causa proxima non remota spectatur*,' does not mean necessarily that the cause or condition which is nearest in time or space is to be deemed the proximate cause; on the contrary, as said in *Freeman* v. *Mercantile Mut. Acc. Ass'n*, 156 Mass., 351, 30 N. E., 1013, 17 L. R. A., 753, it means that the law will not go further back in the line of causation than to find the active, efficient, procuring cause, of which the event under consideration is a natural and probable consequence, in view of the existing circumstances and conditions. The law does not consider the cause or causes beyond seeking the efficient predominant cause. So the fact that the death of the insured is the consequence of some illegal act of his is not sufficient if it did not occur while engaged in such illegal act as the direct result thereof. Thus, though one has committed an assault on or en-

Southern Ins. Co. v. Graham.

gaged in a combat with another, the violation of law involved therein does not relieve the insurer if the insured has ceased from his assault or retreated from the combat, and is killed by the other person from motives of revenge, though the acts immediately follow each other.''

The case of *Duran* v. *Insurance Co.*, 22 A., 530, 63 Vt., 437, 13 L. R. A., 637, 25 Am. St. Rep., 773, is distinguished on two grounds: First, the insured was actually engaged in an unlawful act at the time of the accident; and, second, the policy exempted the insurer from liability when the violation of law was either the direct or indirect cause of the injury.

The judgment of the trial court will be affirmed.