H. T. McKee, et ux.

*v.*

Potomac Insurance Company.

(*Nashville,* December Term, 1960.)

Opinion filed March 10, 1961.

William S. Russell, Shelbyville, for plaintiffs in error.

Bobo & Tarpley, Shelbyville, for defendant in error.

Mr. Justice Burnett delivered the opinion of the Court.

This is a lawsuit brought by the owners of certain property in Shelbyville against the insurance company for loss claimed by them to real and personal property which they claim was covered by a certain insurance policy. The case was tried on a stipulation of facts. The trial judge, after hearing argument and considering the matter, rendered an opinion dismissing the lawsuit because the property destroyed was not covered in the description of the property given in the policy. From this judgment an appeal has been seasonably perfected and briefs filed. After a consideration of the matter we now have it for disposition.

On December 4, 1951, the McKees purchased a policy of fire insurance upon their motor court which described the coverage as "Approved roof, two story, concrete block and brick Tourist dwelling and office, containing 11 units, situated 211 Madison Street, Shelbyville, Tennessee." This policy was for the term of five years. In 1953, two years subsequent to the issuance of this policy, the plaintiffs in error purchased an adjoining dwelling and converted it into three more motel units. There was no change in the policy and so far as the record shows

no notice of any kind to the insurance company of acquiring this additional property and creating these three additional units.

At the expiration of this policy in 1956, it was renewed with the identical description as above quoted. Nowhere in the renewal policy was there any recognition of these three additional units or the acquisition of this additional property. This renewal policy was likewise for a term of five years from December 4, 1956.

On March 8, 1957, a fire occurred in the three motel units which had been acquired after the original policy was written in 1951 and which was not described or referred to in the renewal of this policy in 1956. This suit is for loss to the real property of these three units and personal property therein contained.

The plaintiffs in error take the position, and it is their theory that under a provision of the policy, to-wit: *"Permission Granted:* * * * (c) To make alterations, additions and repairs and to complete structures in course of construction, and this policy (so far as it applies to building) covers all lumber and materials on the premises or adjacent thereto. * * *"* covers the three additional units built on the adjoining property to that covered by the description, and thus any loss to this additional or adjoining property is covered under the provisions last above quoted for making alterations and additions. The proposition is well briefed and many authorities are cited, quoted from and relied upon to the proposition that when a policy does contain a provision for additions, alterations, etc., as this does, that then it covers such additions as are made within the life of the policy.

It is likewise contended that even though they might be wrong about coverage as far as the realty was concerned the plaintiffs in error are entitled to recover for at least a portion of the loss to their personal property where in "Form 49" which is applicable herein provides that it covers "private structures appertaining to the dwelling described and located on the premises, * *" in that since this was a motel project the first having destroyed personal property belonging to the motel project even though it was not in the description of the eleven units covered herein, still that it covers loss on this personal property. Thus the factual situation and the issues were presented.

■ When property is thus insured the intended subject of the insurance, that is, its description should be clearly set forth in the policy so that the obligation as created by the contract may be certain of ascertainment, either from its specific terms of by a legal method of determining what is meant therein. Of course, if there is any ambiguity about the description or what is meant, extrinsic evidence is admissible to clarify the situation and show what was the intent of the parties.

■ In this case there is no claim in the stipulation that when the renewal policy was written in 1956 the parties intended to cover the three additional units which were not described in the policy. As said above, the only contention is that these three additional units are additions to the property as described and by this fact that they automatically become covered. We cannot agree to this reasoning and argument because the purpose and the terms of additions and alterations in a policy as here mean some small addition or work done on the particular units described and not in the building of additional units.

If it was intended to cover more units and additional property afterwards acquired this description of the addition should be made and it was within the power of the parties to add these three additional units to the description of the property when the policy was renewed, or at the time the additions were completed back in the life of the first policy. By the failure to do so, or to show that there was any knowledge on the part of the agent, or any intention to so cover this property, we think that it was not covered.

In a well recognized text on insurance law (Couch, Encyclopedia of Insurance Law, Vol. 3, Section 747, page 2429), it is said:

"Again, although, in writing an original contract of insurance, it may be the duty of the insurer to ascertain the location of the subject-matter, and correctly to state the same, *the same rule does not apply to renewal policies, and when an insurer has correctly described the location of the property in a policy, and is directed to renew the insurance without any further instructions, it has the right to assume that the subject-matter and its location are the same as described in the former contract;* and, since the location is one of the important elements of the fire risk, an insured who has directed a renewal without notifying the insurer that the property has been removed to a place where the risk is greater, and has accepted the policy describing the location of the property as that originally given, is bound by the terms thereof, and cannot recover for a loss occurring at the new location."

What we have just quoted from this author follows a page and a half of generalities as to place, location, etc.

The emphasis is ours and is done obviously to point out the applicability of the statement of this author to the facts of the instant case.

The following sentence in the next paragraph of this Section from Couch shows the applicability of what we have said to the present situation. ''With respect to real property, it should be described with sufficient definiteness to permit of its positive identification, and the insurer will not be liable, in case of deficiency or misdescription, unless such deficiency or misdescription is the fault of the insurer or its authorized agent.''

■ An answer to the main argument herein that these units were additions and therefore came within the terms of the policy is well stated by Couch, supra, in Section 750a at page 2456, when he said that ''* * * in the case of buildings devoted to particular uses, where it is evident that the connected structures, additions, and extensions were necessary adjuncts to the main building, and therefore contemplated as included in the description as a part of the property intended to be insured'' then the terms, additions, etc., as used herein, apply. This Section likewise points out, and of course all these statements from this author are supported by numerous authorities, if it were shown ''such coverage was contemplated by the parties'' then such additions are covered. There is no showing herein that the additional units or structures were in any wise contemplated by the parties under the stipulation in the present litigation. Under the terms of this policy, concerning making additions, etc., the privilege to make ''alterations, additions, and repairs and to complete structures in the course of construction'' refers manifestly to the property which is described in the policy and cannot be read as intending to permit the

insurance to extend to them when made to property acquired afterwards. These new units were in no sense an addition to the eleven units as described in the policy, but were new property and new units not shown by this record or otherwise contemplated by the parties to this contract. After all an insurance contract is just a simple contract between the parties, and unless there is some uncertainty or ambiguity about it, it cannot be construed otherwise than as it is expressed.

There are many cases involving various and sundry factual situations when there are additions, repairs, etc., but each case depends upon the wording of the particular policy and the facts of each case. For a long and well written annotation on this question see 19 A.L.R.2d, beginning at page 606.

We have very carefully studied this record and authorities therein and must for the reasons expressed above affirm the judgment of the trial judge.