INTERSTATE LIFE & ACCIDENT INSURANCE CO., Appellant, v. DAISY F. GAMMONS and CORDELL H. GAMMONS, Appellees.—408 S.W.(2d) 397.

Middle Section. April 1, 1966.

Certiorari Denied by Supreme Court November 21, 1966.

442

Thomas E. Watts, Jr., of Farris, Evans & Evans, Nashville, for appellant.

J. Vaulx Crockett, of Stockell, Rutherford & Crockett, Nashville, for appellee.

HUMPHREYS, J. Daisy F. Gammons and Cordell H. Gammons, as beneficiaries of a health and accident insurance policy insuring James F. Gammons against death by accidental means, recovered a nonjury judgment in the amount of $6,000.00 against the insuror, Interstate Life & Accident Insurance Co., and the insuror has appealed.

It is admitted insured was killed in an automobile accident while the policy was in force. However, liability is denied on the ground there is a provision in the policy, "the company shall not be liable for any loss sustained or contracted in consequence of the insured being intoxicated * * *" and the company contends insured's death was in consequence of his intoxication.

It is evident Circuit Judge Sam L. Felts, Jr., gave the case most serious consideration, as he made a written finding of facts and conclusions of law which we attach as Appendix.1.

Here, four errors have been assigned which may be summarized: That the court erred in failing to find as a matter of fact that insured James F. Gammons was intoxicated at the time of his death; erred in holding that, because the death certificate indicated "fracture base skull neck and left femur", this was the cause of insured's death and there was no causal connection between in-

sured's intoxication and his death; erred in failing to find as a matter of fact that the death of the insured was in consequence of his being intoxicated and; erred in imposing liability on appellant under the terms of the policy.

The first assignment may be passed over as the trial judge, while assuming that Gammons was intoxicated when killed, was yet of opinion there was liability, so his judgment is not reversible on this account.

We find ourselves in partial agreement with the second assignment, as we do not think the exception from liability on account of intoxication is as limited as the trial judge held. In construing the policy provision to require the insurer to show the insured died from the ingestion of intoxicating beverages, we think the trial judge went too far.

However, this is not to say that we do not concur in the ultimate result reached by the trial judge, for we do.

The point now under consideration is, of course, the turning point of this appeal.

We should restate the exception to have it before us:

"The company shall not be liable for any loss sustained or contracted in consequence of the insured's being intoxicated. * * *"

After a most able discussion of this second assignment, appellant concludes with this proposition:

"Appellant insists that a causal connection has been established between Gammons' intoxication and his death—or, in different terms, that Gammons' death was in consequence of his intoxication."

It is with this proposition that we find disagreement.

 While it is fundamental that insurance contracts are construed as other contracts, from their four corners, with the attitude on the part of the judges that there is no intention to be unfair, still, since the insurer drew the contract and of necessity has had much time within which, and legal advice from which, to ascertain its meaning, any ambiguities therein will be resolved in favor of the not so educated insured who buys it, who generally assumes the contract will do what the big black print on the first page says it will do.

 In other words, as said in McKee v. Potomac Insurance Co., 208 Tenn. 152, 344 S.W.2d 366, an insurance contract is simply a contract, and must be construed as expressed, in absence of uncertainty or ambiguity. And, again, as stated in Fidelity Bond & Mortgage Co. v. American Surety Co., 14 Tenn.App. 211, insurance contracts, like other contracts, should be construed so as to give effect to the intention and express language of the parties. However, it is an unalterable rule that an ambiguous insurance contract must be construed most favorably to the insured, even though plain provisions taken as a whole must be enforced as stated. And, finally, with respect to this aspect of the case, which we think is conclusive of it, it is the controlling rule that ambiguous language in an insurance contract is to be construed most favorably to insured. Ludlow v. Life & Casualty Ins. Co. of Tenn., 31 Tenn.App. 508, 217 S.W.2d 361, 13 A.L.R.2d 980; Ansley v. Travelers Ins. Co., 27 Tenn.App. 720, 173 S.W.2d 702; Citizens' Ins. Co. v. Ayers, 88 Tenn. 728, 13 S.W. 1090; Hoffman v. Germania Ins. Co., 88 Tenn. 735, 14 S.W. 72; Interstate Life &

Acc. Ins. Co. v. Gann, 196 Tenn. 422, 268 S.W.2d 336, 44 A.L.R.2d 1230.

■ In addition, there is the rule that where the loss is within the insuring provisions of a policy, but the insurer relies upon an exception to avoid liability, the burden is upon the insurer to show that the exception exists, and, by the preponderance of the evidence that it operates to relieve of liability. Freeze v. Continental Cas. Co., 5 Tenn. App. 261.

■ In other words, it is clear in this case that, since the insurer agrees the insured's death was accidental, at a time while he was covered by its insurance policy, the burden of proof is on it to show the exception upon which it relies has the effect both in law and fact of excepting it from liability.

■ Reverting to our stated disagreement with the argument of appellant, it is simply that it relies on a construction of the exception most favorable to itself. Although the exception applies only to "loss sustained or contracted *in consequence* of the insured's being intoxicated", appellant argues as though the phrase read "loss sustained or contracted as *a* consequence of the insured's being intoxicated". Of course, if the exception had been so written we think it could fairly be argued under the evidence that intoxication could have been a factor in insured's death so that the exception applied. But, the exception is not so written. It is written, "*in* consequence". This can mean, and we think more nearly means, "loss sustained or contracted *as the* consequence of the insured's being intoxicated." So that the insurer is excepted from liability only if it proves insured's intoxication was "*the*", not "*a*", proximate cause of death. Since the exception is susceptible of the interpretations

we have indicated we must adopt that interpretation favorable to the insured.

It is evident the trial judge had in mind the construction of this exception which we have made, but we think he applied it too strictly, when he held that the exception only applied where the ingestion of intoxicating beverages was itself the cause of death. This construction so limits the exclusion as not to permit it to apply as broadly as it might even when the words *"in* consequence" are read as *"as the* consequence" instead of *"as a* consequence".

Unquestionably, cases can and will arise in which the death is not attributable to the ingestion of alcoholic beverages, but where by the preponderance of the evidence it is shown the state of intoxication is the proximate cause of death, and not simply a factor to be considered, as in this case.

We say as in this case, because, while there is much expert evidence with respect to the alcoholic content of the insured's blood, certainly enough to make the state of his intoxication a factor to be considered in determining the cause of his death, there is also much evidence in the record, we think a preponderance, that it was not the cause of death.

The evidence of the passengers in the automobile is to the effect that insured gave no evidence of being intoxicated, and, that the accident occurred when the automobile insured was driving, at a speed variously estimated from fifty to seventy-five miles per hour, met another automobile on a curve, on a hogbacked road, and in pulling out to pass this car, the wheels struck loose gravel on the road and on the shoulder, following which

the insured lost control, so that the automobile ran off of the road and struck a tree.

We quote from the bill of exceptions:

"Q. Let me ask you this. Just before the accident you say you were going 50 or 55 miles as hour, approximately?

A. Yes, sir.

Q. Was there any other car involved in that accident?

A. We passed one, met one in the opposite direction. It was going in the opposite direction, we passed a car.

Q. Was there any loose gravel that the car got in?

A. When it hit the shoulder of the road, it did.

Q. I see. As I understand it—did it happen on a curve?

A. I don't remember, but the way I understand it, it did.

MR. RUTHERFORD: That's all.

THE COURT: Mr. Harris, you got in this automobile about how many minutes—you got in Mr. Gammons' automobile about how many minutes before this accident took place?

THE WITNESS: Not over five minutes.

THE COURT: All right. At the time you got into this automobile with Mr. Gammons were you yourself under the influence or not.

THE WITNESS: I don't know whether you would call it under the influence or not.

THE COURT: Well, were you drunk or sober?

THE WITNESS: I think I was sober. I was drinking.

THE COURT: You think you were sober. Do you think you were in such a physical condition that you could determine whether Mr. Gammons was under the influence of an intoxicant or not?

THE WITNESS: I think so. I think I could have told if he was drunk or not.

THE COURT: Now, and you sat on the right hand side of the front seat of the car?

THE WITNESS: Yes, sir.

THE COURT: And Mr. Gammons was driving?

THE WITNESS: Yes, sir.

THE COURT: Did you get close enough to Mr. Gammons to smell his breath?

THE WITNESS: Wayne Haynes was sitting between us in the front seat.

THE COURT: But before you got into the car did you ever have occasion to smell his breath?

THE WITNESS: No, sir.

THE COURT: Before you got in the car did you observe him walking around?

THE WITNESS: Yes, sir.

THE COURT: Did you come up to him and get close to him to observe whether or not he was drunk or sober—that is, whether he was under the influence of an intoxicant or not?

THE WITNESS: As close as I was, he looked sober to me." (Testimony of Miles Harris)

Another passenger in the car, Robert Mousseau, under examination by the trial judge, testified as follows·

THE COURT: Now Mr. Mousseau, you were a passenger in this automobile. Do you know what caused the automobile to run off the highway at the time of the accident.

THE WITNESS: Well, I know there was gravel and it would be pretty hard to make a corner on that gravel anyway, even if he was traveling 35.

See, I could see the gravel was loose—I mean it was spread all over the highway.

THE COURT: Do you know of your own knowledge whether this accident happened as a consequence of Mr. Gammons' being under the influence of an intoxicant or barbiturate?

\* \* \* \* \* \*

Do you know or not?

THE WITNESS: No, I don't." (Testimony of Robert Mousseau)

Chester Earl Duffield, Sr., a Metropolitan Patrolman, who was in a position to observe the automobile testified:

"Q. Could you tell us in your own words, Officer, what you saw at that time and what you heard?

A. Well, I was sitting there, I had been there about ten minutes, I guess, and I heard a car coming up Elm Hill Pike, I believe going east, coming towards me and I could tell he was sort of moving and I didn't know how fast he was going but he was moving pretty fast

and I had put the car in low gear and was going to wait untill he got by me because I was going after him, but as he come around a little curve there right at McCrory Lane where it comes out into Elm Hill, why he seemed to lose control of the car.

The rear end hit the gravel there and it seemed like the back of the car just hit the ditch and it throwed the front end down in the ditch and they just went right straight up through the road there, beside of Elm Hill Pike.

Q. Now Officer, did you have an occasion on the basis of your experience to form an opinion as to how fast that car was going when you saw him?

A. Well, I estimated, I figured he was bound to be around 75 miles an hour.

MR. RUTHERFORD: Of course, I object to that unless he knows. He says he figures and he estimates. We don't want him to guess.

THE COURT: Give us your estimation of the speed, Officer.

THE WITNESS: I estimate it between 75 and 85 miles an hour.

Q. Now Officer, can you tell what happened, tell us, the Judge what happened to that car after it left the road, what it ran into and where it came to a stop?

A. Well, after the car left the road, like I say the rear end, as he come around the curve, hit the gravel.

The rear end hit the ditch and the front part, it threw into the ditch and it traveled up the road and

beside of the road and it hit a marker sign and there was a telephone pole there that it straightened out.

He cut the telephone pole down and traveled on and came to rest against a tree beside the road.

Q. And this all happened while you were sitting there watching?

A. Yes, sir.'' (Testimony of C. E. Duffield)

 There is no evidence to the contrary of this. So, we have concluded, necessarily, that the insuror has not carried the burden of showing intoxication was *the* proximate cause of death. As the quoted evidence rather clearly shows, we think, that insured's death was the result of several factors, high speed, (as to which there is evidence the automobile had had its old engine replaced by a rebuilt one, which could explain the manner of operation), hogbacked road, meeting an automobile on a curve, gravel on the roadway causing the car to skid in the curve, all of which could have combined to cause the death of the soberest of men.

So, being persuaded the exception only applies when intoxication is *the* proximate cause of death, and being of opinion the evidence falls short of proving the exception when so construed, the assignments of error are overruled, and the judgment is affirmed.

Shriver and Puryear, JJ., concur.

## Appendix I.

''This is a suit wherein the plaintiffs, Daisy F. Gammons and Cordell H. Gammons, as beneficiaries, sued the defendant, Interstate Life & Accident Insurance Company, to recover the sum of Six Thousand ($6,000.00)

Dollars as beneficiaries under Policy No. 6006352001, issued June 1, 1960, on the life of James F. Gammons. This policy insures against accident and death by accidental means. The policy provides:

'Indemnity for Death by Accidental Means, as Defined herein: Upon receipt by due proof that during the continuance of this policy in force, the Insured has sustained bodily injuries effected solely through violent, external and accidental means, and that such bodily injuries have directly and independently of all other causes, caused the death of the Insured within ninety days from the time such injuries were so sustained, the Company will pay to the Beneficiary named in the Schedule the Principal Sum less any amount paid or payable on account of the same injuries under the provision for Indemnity for Specific Losses, but subject to the exceptions below.'

Under the heading of 'Exceptions', the policy provides as follows:

'No indemnity for Death by Accidental Means shall be payable if death results (a) from self-destruction, while sane or insane, (b) from service in the military or naval forces of any country at war, declared or undeclared, (c) from injuries intentionally inflicted upon the Insured by himself, while sane or insane, or by any other person than burglars or robbers, (d) directly or indirectly from bodily or mental infirmity or disease in any form, or medical or surgical treatment therefor, or (e) from travel or flight in, or descent from, any kind of aircraft, as a passenger or otherwise, unless such travel or flight was made as a fare-paying passenger of an incorporated common carrier traveling in an aircraft licensed for passenger service and

operated by a licensed pilot or a regular passenger route between definitely established airports. Upon the anniversary of this Policy after the Insured attains sixty-five years of age, the Policy shall expire, and there shall be no further liability under same.'

Below the above quoted paragraph on the first page of the Policy are the signatures of the President and Secretary.

On February 2, 1964, the insured, James Floyd Gammons, was killed in an automobile accident. The cause of death was listed as 'fracture base skull neck and left femur'. 'Interval between Onset and Death—Immediate'. This language is seen in the Death Certificate prepared and signed by Dr. W. J. Core, the Coroner for the Metropolitan Government of Nashville and Davidson County.

In response to the Declaration filed by the Plaintiffs, the Defendant seeks to avoid payment of the benefits of the policy and relies upon the following provision:

'Intoxicants and Narcotics: The Company shall not be liable for any loss sustained or contracted in consequence of the Insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician.'

## Finding of Facts

On February 2, 1964, the insured, James Floyd Gammons, in company with Mousseau, Haynes, Harris and Williams, and while traveling at a high rate of speed, ran his automobile off the road on Elm Hill Pike and was killed instantly. The accident occurred approximately 300 feet east of McCrory Creek Lane on Elm Hill Pike.

Gammons' companions, prior to the accident, had been drinking, but there is no proof in the record that Gam-

mons himself had been drinking. A State Trooper testified that Gammons was traveling approximately 75 miles per hour and lost control of his car and ran off the road.

Following the examination by Dr. Core, certain blood samples were taken from Gammons' body and sent to the State Toxicological Laboratory and examined by Mr. Jack Tyner, and he found that Gammons' blood contained .23% alcohol by weight. The defendant called Dr. Oates, a physician who testified that in his opinion anyone with a blood alcohol content above .09 by weight was intoxicated.

## Conclusions of Law

Recovery is sought by the Plaintiffs under the provisions of the Policy 'Indemnity for Death by Accidental Means, as Defined Herein', the terms of which are quoted above.

It is not disputed that the Insured 'sustained bodily injuries effected solely through violent, external and accidental means, * * *.' It is also not disputed that the exceptions listed on page 1 of the Policy, as quoted above, are not applicable in the present case.

The Defendant seeks to avoid payment under the 'Intoxicants and Narcotics' provision of the Policy, the language of which is set forth above.

Such provision is an exception to the Policy and the burden of proof rests with the Defendant Insurer to plead and proof that the death or injury resulted as an excepted cause. Freeze v. Continental Casualty Co., 5 Tenn.App. 261.

'Where the loss sued for appears to be within the general coverage of the policy and the insurer invokes an exception excluding such loss from the general

coverage, the burden of proof is on the insurer to establish that such loss comes within the exception. Freeze v. Continental Casualty Co., 5 Tenn.App. 261; National Life & Accident Ins. Co. v. Hunter, 14 Tenn. App., 512, 516; Interstate Life & Accident Ins. Co. v. Potter, 17 Tenn.App. 381, 68 S.W.(2d) 119; Jett v. Life & Casualty Ins. Co., 21 Tenn.App. 266, 272, 109 S.W. (2d) 104; National Life & Accident Ins. Co. v. Eddings, 188 Tenn. 512, 523-524, 221 S.W.(2d) 695; Am.Jur., Insurance Sec. 1444.' Reserve Life Insurance Co. v. Boss, 37 Tenn.App. 456, 458 [264 S.W.2d 587].

The Court is of the opinion that the cause of Gammons' death was 'Fracture base skull neck and left femur' and that his death was immediate, as found by Dr Core.

'Where accident can be considered as sole and proximate cause of death, or where death is reasonable and natural consequence of an injury an insurer will be held liable although disease or infirmity may have been present as a condition or secondary cause.' North American Ins. Co. v. Ellison, 37 Tenn.App. 546 [267 S.W.2d 115].

See also Britton v. Prudential Insurance Co., 205 Tenn. 726, 731 [330 S.W.2d 326, 82 A.L.R.2d 605].

While it is true that Dr. Oates testified that in his opinion anyone with a blood alcohol content of above .09 by weight is intoxicated, there is no proof before the Court to the effect that the Insured's intoxication was the cause of his death, and, to the contrary, the proof indicates that his death was caused by 'Fracture base skull neck and left femur'.

The language 'loss sustained or contracted in consequence of the Insured being intoxicated * * *' requires causal connection between the prohibited provision and

the Insured's death and such is not present in this case. Southern Insurance Co. v. Graham, 152 Tenn. 578 [280 S.W. 30].

In Insurance Company vs. Bennett, 90 Tenn. 256, 267, 268 [16 S.W. 723], the Court held:

'In order to defeat a recovery because of such provision, there must appear a connecting link between the unlawful act and the death. It is not sufficient that there was an unlawful act committed by the insured, and that death occurred during the time he was engaged in its commission. There must be some causative connection between the act which constituted the violation of the law and the death of the insured. Bloom v. [Franklin Life] Insurance Company, 97 Ind. 478.'

To the same effect see Southern Life Insurance Co. vs. Graham, supra.

Again, in the Bennett case, supra, at page 268 [163 S.W. 723], it is said:

'The provision of the policy excluding liability for injury received by the insured while committing an unlawful act, refers to such injuries as may happen as the necessary or natural consequences of the act— as its probable and to be anticipated consequences; and the reference to injuries received "in consequence of any unlawful act" is to those injuries which arise out of or flow naturally from the act committed as its effect or resulting consequence.'

To this same effect, see Life & Casualty Insurance [Co.] vs. Gardner, 21 Tenn.App. 244 [108 S.W.2d 1100].

The Court is of the opinion that the Defendant has failed to carry the burden of proof and that the Plaintiffs should recover."