**Mrs. Ruby D. WILLIAMS, Appellant,**

v.

**BANKERS LIFE COMPANY, Appellee.**

Court of Appeals of Tennessee,
Western Section.

Dec. 13, 1971.

Rehearing Denied Jan. 28, 1972.

Certiorari Denied by Supreme Court
June 5, 1972.

C. M. Murphy, Memphis, for appellant.

Frierson M. Graves, Jr., Memphis, for appellee.

NEARN, Judge.

This suit hinges on the interpretation of the verbiage of a group insurance policy.

The complainant, widow of Grapel F. Williams, filed her bill in the Chancery Court of Shelby County, Tennessee, against the defendant insurance company, seeking the benefits of a group hospital and life insurance policy issued by the defendant providing for coverage of employees of Windyke Country Club. The bill alleged that the deceased was employed as a bookkeeper for the Windyke Country Club at the time of his death and was covered under the terms of the policy but, after demand had been made for payment, it had been refused. The bill prayed for a judgment for the amount due under the policy plus 25% penalty.

The matter was tried before the Chancellor without a jury and he held, *inter alia,* that the terms of the policy were unambiguous and that the deceased, Grapel F. Williams, was not a full-time employee within the meaning of the policy and dismissed the bill.

Complainant has seasonably appealed to this Court with six Assignments of Error. Considered separately or together, the six assignments raise four issues for determination, i. e.: (1) Did the Chancellor err in ruling that the policy was not ambiguous and the deceased was not included under the terms thereof; (2) Had the defendant waived the "full-time" employment requirement of the policy; (3) Because of prior payment of hospitalization benefits under the terms of the policy, was the defendant estopped to now deny coverage; and (4) Should the 25% statutory penalty be awarded in the event the complainant is entitled to recover?

The portion of the policy about which this dispute revolves is that part which defines a full-time employee. In essence, the policy provides for coverage to full-time employees of Windyke Country Club and defines the term as follows:

"The term 'full-time employee' means an employee whose employment with the Group Policyholder constitutes his principal occupation and who is regularly scheduled to work at such occupation not less than thirty hours per week."

The deceased had been a public accountant or bookkeeper for many years. He kept the books of Windyke Country Club for which he was paid the sum of $400.00 per month, or $4,800.00 per annum. The company books were kept at the deceased's home and the deceased made periodic trips to the Windyke office for examination of the checkbooks, etc. The deceased did not work up the income tax returns, nor did he tend to the monthly billing of the members of the Windyke Country Club, but he did maintain the general ledger and made records on withholding taxes, social security, and the like. He was not required to be at Windyke's office on any particular day or time, but came and went as he pleased. His function was to keep the books up to date on his own schedule. Income tax returns were handled by a Certified Public Accountant. Windyke withheld neither income tax deductions nor social security deductions from the monthly check of $400.00 to Williams.

Grapel Williams also kept the books for other business concerns. The record reveals without dispute that Mr. Williams also kept the books for Wayne Candy Company and others. For the year 1968 he was paid the sum of $8,100.00 by Wayne Candy Company.

The deceased's income tax return for the year 1968 was the last prepared during his lifetime and was introduced in evidence. The 1969 return was also introduced and was prepared in 1970 after Mr. Williams had died. The date of his death was January 25, 1970. The deceased identified himself on the 1968 return as a Public Accountant with his business address as his home. Wayne Candy Company was listed as an employer and Windyke was not. The W-2 form from Wayne Candy Com-

pany was attached to the return showing the amount of wages received from the Wayne Candy Company and the amounts withheld for income taxes and social security. The amount paid by Windyke was included in income from his business or profession along with amounts received from other clients for bookkeeping work. The 1969 return revealed substantially the same information. It appeared that about 25% of the deceased's annual income was derived from the Windyke Country Club.

It is the argument of the appellant that Grapel F. Williams was a bookkeeper and that working as a bookkeeper was his principal occupation. That he was employed by the group policyholder at his principal occupation of bookkeeping for at least thirty hours per week and, therefore, he was included in the definition of a full-time employee.

■ An insurance contract is like any other contract and the words used therein will be given their ordinary meaning unless a contrary intent is shown. Foote Mineral Co. v. Maryland Cas. Co. (D.C.1959) 173 F.Supp. 925, affirmed 6 Cir., 277 F.2d 452, certiorari denied 364 U.S. 818, 81 S.Ct. 49, 5 L.Ed.2d 48; Guardian Life Ins. Co. of America v. Richardson (1939) 23 Tenn. App. 194, 129 S.W.2d 1107. If, after applying the foregoing rule an ambiguity arises, such ambiguity will be construed in favor of the insured and against the company. Interstate Life & Acc. Ins. Co. v. Gammons (1966) 56 Tenn.App. 441, 408 S. W.2d 397.

■ The Chancellor found no ambiguity in the verbiage in the clause defining a "full-time employee" and neither can we. The rule requiring that the language of a policy be most strongly construed against the company does not permit the Court to create an ambiguity where none exists. Wallace v. State Farm (1949) 187 Tenn. 692, 216 S.W.2d 697. We hold the clause in question is not ambiguous and clearly defines a full-time employee as one whose principal occupation is that employment by the policyholder. Applying this construc-

tion to this case, Grapel Williams would have to be an employee whose principal occupation was a bookkeeper for the Windyke Country Club and be regularly scheduled to work thirty hours per week.

■ This case arrives in this Court accompanied by the presumption of the correctness of the Decree below unless the evidence preponderates to the contrary. T.C.A. 27–303. In the light of our holding as above stated of the meaning of the clause which defines a full-time employee, we have examined the proof introduced in this cause and conclude that the evidence does not preponderate against the Chancellor's finding that the deceased was not a full-time employee under the terms of the policy. In fact, in our opinion, the evidence strongly preponderates in favor of the Chancellor's finding. Under the definition of full-time employee contained in the policy, there are two requirements to be met before one can be considered a full-time employee. The first is that the insured's principal occupation be that employment by the policyholder. The second is that the insured be regularly scheduled to work at that principal occupation for no less than thirty hours per week. We hold that the deceased has not met the first requirement. It is evident from all the proof that bookkeeping in general was the deceased's principal occupation, but it is also evident that the bookkeeping employment by Windyke in particular was not his principal occupation as required by the terms of the policy. The proof is undisputed that he was a bookkeeper for a number of clients. It is evident from examination of the deceased's tax returns that his employment or job with Windyke was not his principal occupation.

■ The appellant relies upon the long acquaintanceship of Walter Stone, the agent for Bankers Life Company, with Dykema, the owner of Windyke Country Club, and the deceased, as an imputation of knowledge of the true facts of Williams' relationship with Windyke, and therefore such knowledge by Stone as agent of the

defendant was knowledge to the principal, and the issuance of the coverage with such knowledge was a waiver of the strict definition of "full-time employee" contained in the policy.

Windyke had had group insurance coverage with one company or another for a number of years. Stone was the agent who initiated the policies for the prior coverage and for the coverage with Bankers Life. At the inception of the Bankers Life coverage, Williams was not included as an employee and at no time before under any prior policy had he been included as an employee. It was not until July 1, 1969, that Windyke directed the defendant to include Williams under the terms of the policy. The agent, Walter Stone, had known Mr. Dykema since about 1935 or 1936 and knew that Williams was Dykema's brother-in-law and knew that Williams had been Dykema's bookkeeper for some fifteen years. He also knew that Williams kept books for Wayne Candy Company. The manager of Windyke, Herbert May, testified that he had conversations with Stone concerning the enrollment of Williams in the group policy at about the time Williams was enrolled. Stone denied any such conversations. Stone testified that he was unaware that Williams was included in the group policy until after the death of Williams.

The fact that Stone knew that the deceased was also bookkeeper for Wayne Candy Company and other clients does not mean that he also knew which of the deceased's employments constituted his principal occupation. Whether or not Stone knew of the inclusion of Williams in the coverage we think is of little importance. The Chancellor held that Stone "did not have knowledge of the facts and circumstances concerning the deceased when he was added to the policy as a beneficiary . . . " and we concur in that finding.

Zarzour v. Southern Life Ins. Co. (1959) 46 Tenn.App. 680, 333 S.W.2d 14, was a case involving a group life insurance policy. The policy provided there was no coverage on the insured after 70 years of age. The insured was 73 at the time he was included under the group policy. As in the instant case, there was the question of the quantity of material facts known by the agent for the insurer at the time the insured was included on the policy. The agent admitted that, considering the matter in retrospect, if he had sufficiently thought about the matter and put together all information he had, he would have considered the insured coverage. The Court held that in matters of group insurance policies, such information did not bring home to the insurer the fact that the applicant was beyond the insurable age and was insufficient to charge the insurer with that knowledge.

In discussing group insurance policies, the Court cited Appleman on Insurance, Section 9143, as follows:

" 'Where there is no application and no knowledge on the part of the insurer of the existence of things which the policy declares shall render it void * * * and the insured accepts the policy * * * he is bound by its conditions though he made no representation.' "

■ We hold that where, as in group insurance policies, there is no application by the insured, but only a directive for inclusion issued by the employer to the insurer, accompanied by a group enrollment card signed by the employee authorizing payroll deductions and inclusion in a policy already applied for and issued to the employer, the knowledge of facts on the part of the insurer required to invoke the doctrine of waiver must be of such calibre as to constitute information which would immediately and clearly bring home to the insurer the fact that the employee is uninsurable and the policy void unless the terms of the policy are waived. Also, we would paraphrase Judge McAmis in the *Zarzour* case, supra, and say that the employee himself owes some duty, especially where, as in this case, the exclusion based on lack of

status as a full-time employee is plainly and clearly stated in the policy.

Next, it is argued that, because of the payment by the defendant of a claim for hospitalization expenses incurred by the deceased for the treatment of pneumonia in 1969, the defendant is now estopped to deny coverage. The defendant insurance company paid a claim on January 14, 1970, for the hospital expenses occasioned by the pneumonia illness of June, 1969. The appellant's argument is based on the fact that when the defendant paid the pneumonia claim it was aware that Williams also worked for Wayne Candy Company as the defendant deducted from the medical expense check to Williams an amount representing an adjustment for other insurance. The claim filed by Williams was slightly in excess of $500.00. The appellant relies upon the case of Westchester Fire Ins. Co. v. McAdoo (1899) Tenn.Ch.App., 57 S.W. 409, as authority for the alleged waiver and estoppel. In *McAdoo,* the policy provided for fire insurance on the home of Mrs. McAdoo and she suffered a loss by fire. The defense was that Mrs. McAdoo had forfeited her coverage because she had mortgaged her property without first obtaining the consent of the company as was provided in the policy. The facts of the case show that sometime prior to the major fire for which payment was sought, Mrs. McAdoo had made claim for a $30.00 fire loss. The proof preponderated that at the time the company adjusted the small loss it became aware of the mortgage but paid the loss in spite of the violation of the terms of the policy. The Appellate Court held that the payment of the small loss with full knowledge of the violation of the terms of the policy acted as a waiver of such forfeiture terms in the policy and the company was estopped to deny coverage based on the forfeiture provisions of the policy.

We have no quarrel with the holding in *McAdoo,* supra, but the case turned on the factual issue of whether the insurer had knowledge of the breach or violation of the terms of the policy. In the instant case, we have already determined that the insurer did not have the required knowledge at the inception of coverage to invoke the doctrine of waiver and estoppel. There is no proof that Bankers Life conducted any investigation or acquired any additional knowledge at the time the claim for the pneumonia hospitalization was paid, other than the additional fact that Williams also had other insurance, which of itself does not void the policy. It is undisputed that the insurer made no investigation of the claim at the time it was paid. It is the policy of the insurer that no claim under $1,000.00 be investigated. Therefore, the insurer's position and rights were unaffected by payment of the prior claim and *McAdoo* clearly holds that absent the fact of knowledge of a violation by the insurer there would be no waiver or estoppel by payment of a prior claim.

The Chancellor correctly held that the defendant was not estopped to deny coverage.

Since we find no error in the Chancellor's findings or in application of the law, there can be no error in his refusal to award the complainant judgment in any amount. It results that the issues are answered in favor of the appellee and all Assignments of Error are overruled and the Decree of the Chancellor affirmed.

The costs of the appeal are adjudged against the appellant.

CARNEY, P. J., and MATHERNE, J., concur.

### On Petition for Rehearing.

Counsel for appellant has filed a very forceful Petition for a Rehearing charging the Court with the misapplication of the law. However, the petition is primarily a reargument of the case and fails to call to our attention any matters overlooked or not previously considered by the Court.

We must deny the petition.