FILED

02/28/2017

Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 17, 2017 Session

## ESTATE OF CHARLES ALLEN LANE ET AL. v. AMANDA DAVENPORT COURTEAUX

**Appeal from the Chancery Court for Rutherford County**
**No. 14CV-27      Howard W. Wilson, Chancellor**

_____

### No. M2016-00609-COA-R3-CV

_____

Decedent had a life insurance policy in which she named her husband and sister as beneficiaries. Upon her death, Decedent's husband filed suit to recover the proceeds Decedent left to her sister and place them in trust for the benefit of Decedent's son, who was a minor at the time. The trial court concluded the son was entitled to the proceeds based on the theory of promissory estoppel. The sister appealed, and we reverse the trial court's judgment. An insurance policy is a contract between the insured and the insurance company, and Decedent was entitled to designate whoever she desired as a beneficiary of her policy. Evidence of Decedent's intent with respect to the proceeds does not deprive the named beneficiary of her right to the funds.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Wm. Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Amanda Davenport Courteaux.

Jay B. Jackson, Murfreesboro, Tennessee, for the appellees, Estate of Charles Allen Lane, David Kevin Sharp, Charles Ezra Lane, and William Conner Lane.

# OPINION

Teresa Davenport Lane ("Ms. Lane" or the "Decedent") and Charles Allen Lane were married and had a son, Conner, who was born in 1997. Ms. Lane had a $600,000 life insurance policy in which she initially designated her husband as the sole beneficiary. When Conner was about twelve years old, Ms. Lane was diagnosed with a terminal cancer. A few weeks before her death, Ms. Lane added her sister, Amanda Davenport Courteaux, as a co-beneficiary of her life insurance policy.[1] Ms. Lane designated Mr. Lane and Ms. Courteaux to receive $300,000 each upon her death.

Ms. Lane's husband received a diagnosis of terminal cancer after his wife, and he was not expected to outlive Ms. Lane. Ms. Lane died unexpectedly, without warning, in November 2013. Mr. Lane was unaware that his wife had added Ms. Courteaux as a beneficiary until after Ms. Lane's death, when he sought to collect the entire $600,000 from the insurance company. Mr. Lane believed that his wife left half of the proceeds to her sister for the purpose of taking care of Conner, who was then sixteen years old and on the verge of having no living parents to take care of him. When Mr. Lane became concerned that Ms. Courteaux was going to use the insurance proceeds for purposes other than Conner's welfare, he filed a complaint against Ms. Courteaux and Protective Life Insurance Company, the company that issued the life insurance policy at issue.[2]

When he filed the complaint, Mr. Lane asked the trial court to issue a temporary restraining order enjoining Ms. Courteaux from spending or transferring any of the insurance proceeds until the resolution of the case. The court issued the temporary restraining order as requested. In the complaint, Mr. Lane sought to have $270,000 of the insurance proceeds payable to Ms. Courteaux put into a trust for the benefit of Conner.[3] The legal theories Mr. Lane asserted to justify this relief included breach of contract/reformation, imposition of a constructive trust, promissory estoppel, and unjust enrichment.

The trial took place on February 10, 2016. Mr. Lane died prior to the trial, in September 2014, and his executors and estate were duly substituted as parties in his place. The evidence at trial consisted of testimony by Ms. Courteaux, Conner, Conner's half-sister, Serita Lane, Conner's grandmother, Elaine Davenport, and family friends. The testimony was consistent that Conner was Ms. Lane's main priority and the center of

---

[1] The record does not contain a change of beneficiary form or date certain when the change of beneficiary was made. Conner's half-sister, Serita Lane, testified that she was with Ms. Lane when Ms. Lane added Ms. Courteaux as a beneficiary and that it was "about four weeks before she died."

[2] The insurance company was non-suited before trial and is not a party to this appeal.

[3] Of the $300,000 the Decedent left to Ms. Courteaux, Mr. Lane believed his wife wanted Ms. Courteaux to keep $30,000 and put the rest in trust for the benefit of Conner.

her life, and she wanted to be sure he was taken care of after she and her husband died. Ms. Courteaux testified that she and her sister, Ms. Lane, were very close all their lives and that they both promised the other to take care of the other's children if anything ever happened to one of them. Before she died, Ms. Lane informed Ms. Courteaux that "there would be money available for [her] to take care of Conner with," but Ms. Courteaux did not know that she was a beneficiary of her sister's life insurance policy until after Ms. Lane died. Ms. Courteaux testified that she did not have any discussions with her sister about insurance or any insurance proceeds.

A document was introduced as "Exhibit 1" that was identified as a page from a spiral notebook belonging to the Decedent that contained handwriting by the Decedent. At the top of the page, the Decedent wrote, "My wishes are as follows," and below that line she listed several names, including Ms. Courteaux's and Elaine Davenport's. The Decedent wrote dollar amounts next to most of these names. Underneath the list of names she wrote: "Chuck Lane is to oversee all my possessions and distribute them accordingly."[4] Ms. Courteaux testified that she did not see this document, or know anything about it, until after the Decedent died and Conner sent her a photograph of it.

In response to the Estate's attorney's questions regarding how she intended to use the money if the court were to allow her to keep the proceeds, Ms. Courteaux testified as follows:

A:      If it's my money, what does it matter what I use it on?

. . . .

Q:      So if I understand you, . . . if it's not my business, it's not [Conner's] business either, right? So it's not his business as to how you use this money?

A:      That's my nephew and if he ever needed anything, I would help him - -

Q:      If there's anything left - -

A:      - - whether I get the money or not.

Q:      If there's anything left after you use it the way you see fit, right?

A:      I will take care of my nephew.
. . . .

---

[4]"Chuck Lane" is a reference to the Decedent's husband, Charles Allen Lane.

- 3 -

Q:     And you don't believe that anything should be set aside to carry out what your dying sister asked you to do, to take care of her son with?

A:     I believe she trusted me to do with it how I felt to do with it.  She trusted me.  That's why she gave it to me.

Conner testified that he was not present for any conversations between his mother and his aunt (Ms. Courteaux) regarding the life insurance proceeds that his mother left to Ms. Courteaux.  Once his mother died, however, Conner testified that he overheard a conversation between his father and aunt regarding this money.  Conner testified that when they were meeting with the funeral director about the service, his father and aunt spoke about the proceeds:

I remember my dad had said to her - - he looked at her and specifically said, "You know what you are supposed to do with your half of the money whenever it gets here."  And she said "Yes."

Conner's half-sister, Serita, also testified about this conversation.  She said:

[W]hen the funeral director was asking about the life insurance policy and how everything was going to be paid for at the funeral, everything was discussed.  My dad looks at Amanda and says, you know what to do with your part, right?  Yes.  I will cut - - I will take my 30,000 out and send you the rest.

Q:     What is she talking about, $30,000?

A:     From the life insurance policy.

Q:     I know, but how did that number - -

A:     Because of the sheet of paper.[5]  That's why I said, this came out before we went to the funeral home.  This was already there.

Q:     There is no specific 30,000, so how did you - -

A:     Elaine's 10,000, Amanda's 10,000, and Avaya and Cane are 5,000 apiece, that's 30 grand.

---

[5]The sheet of paper Serita is referring to is the document introduced as Exhibit 1.

Serita testified that she was with Ms. Lane when Ms. Lane prepared Exhibit 1 and when Ms. Lane added her sister as a beneficiary to her life insurance policy. When asked about Ms. Lane's decision to add her sister as a beneficiary alongside her husband, Serita testified that it was "[f]or the benefit of taking care of Conner. It wasn't for the benefit of Amanda and everybody else."

Before he died, Mr. Lane testified by deposition. He testified that his wife intended the money she left to Ms. Courteaux to be used for Conner and not for any purpose other than as set forth in Exhibit 1. According to Mr. Lane, his wife wanted her sister (Ms. Courteaux) to take $30,000 for herself, their mother, and Ms. Courteaux's children, and transfer the remainder of the money to Mr. Lane, who would ensure that the rest was used for Conner's benefit.

TRIAL COURT'S ORDER

The trial court issued a decision awarding Conner a judgment in the amount of $297,855.48 on the grounds of promissory estoppel. The court wrote:

> The Court finds that the Plaintiffs have successfully proven their claim of promissory estoppel. Ms. Courteaux admits that she promised Ms. Lane she would care for Conner, and in response, Ms. Lane told her that money would be available for that purpose. Clearly, this placed Ms. Courteaux on notice that her promise was being relied upon by Ms. Lane. Extensive witness testimony indicates that Ms. Lane and Ms. Courteaux were very close as sisters. Evidence shows they spoke nearly every day, attended Ms. Lane's doctors' appointments together, and displayed a considerable amount of love, trust, and respect for one another.

> Ms. Courteaux admits that she was aware of Ms. Lane's $600,000.00 life insurance policy, and the testimony indicates she was generally aware of her finances. By promising Ms. Lane that she would care for Conner, and Ms. Lane's immediate response that money would be available, it is undeniably reasonable for Ms. Courteaux to expect that Ms. Lane would take steps to ensure that the stated funds would be made available. Given her knowledge of the substantial life insurance policy held by Ms. Lane, the trust placed in her by Ms. Lane, and the large amount of money that would be required to support Conner's ongoing needs, a reasonable person in Ms. Courteaux's shoes would have expected Ms. Lane to take action in reliance on her promise. Given the fact that Ms. Lane was facing an end of life scenario and needed to make arrangements for her son, the reasonable person would have expected such reliance to be extensive.

Placing trust in Ms. Courteaux and relying on her promise, Ms. Lane named Ms. Courteaux as partial beneficiary of her life insurance policy. This reliance proved to be detrimental when Ms. Courteaux announced her intention to use the insurance proceeds for reasons besides Conner's care. The pecuniary value of that detrimental reliance is at least the amount that was to be paid to Ms. Courteaux as Ms. Lane's beneficiary. From Ms. Lane's subjective viewpoint this amount may be far higher. The value Ms. Lane placed on the peace of believing that Conner would be cared for with the allocated funds cannot be known. Absent Ms. Courteaux's promise or with knowledge that Ms. Courteaux would circumvent her promise, Ms. Lane would have relied on someone else for Conner's support. Accordingly, the Court finds that the damages resulting from Ms. Lane's reliance on Ms. Courteaux's unfulfilled promise is $297,855.48. Of the original $300,000 death benefit, slightly over $2,000.00 was used for Ms. Lane's funeral expenses. Therefore, this amount represents the remaining balance of the benefit account with Protective Insurance Company.

The trial court also concluded the Estate and Conner failed to prove their claim based on the theories of unjust enrichment, imposition of a constructive trust, or reformation of contract.

Ms. Courteaux appealed from the trial court's judgment. She argues the trial court erred in awarding her portion of the life insurance proceeds to Conner. In the alternative, she argues the court erred in awarding Conner more than the $270,000 the Estate and Conner sought in the complaint. The Estate and Conner contend the trial court properly determined that Conner is entitled to the funds based on promissory estoppel. However, in the event this Court disagrees with the trial court's judgment, they argue Conner is entitled to the funds based on the doctrine of unjust enrichment or that a constructive trust should be imposed to hold the funds for the benefit of Conner.

ANALYSIS

On appeal, we review the trial court's findings of fact de novo, affording them a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d); *Spann v. Am. Express Travel Related Servs. Co., Inc.*, 224 S.W.3d 698, 707 (Tenn. Ct. App. 2006); *Johnson v. Nissan N. Am., Inc.*, 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004). We review the court's legal conclusions de novo, with no presumption of correctness. *Spann*, 224 S.W.3d at 707; *Johnson*, 146 S.W.3d at 604.

An insurance policy is a contract between the policy owner and the insurance company. *McKimm v. Bell*, 790 S.W.2d 526, 527 (Tenn. 1990); *Interstate Life & Accident Ins. Co. v. Gammons*, 408 S.W.2d 397, 399 (Tenn. Ct. App. 1966). When interpreting an insurance policy, courts in Tennessee do not look outside the four corners

of the document when there are no ambiguities because "a party's intent is irrelevant when the language of the policy is clear and unambiguous." *Travelers Ins. Co. v. Webb*, No. 01-A-01-9508-CH00379, 1996 WL 23491, at \*2 (Tenn. Ct. App. Jan. 24, 1996) (citing *Gammons*, 408 S.W.2d at 399).

The plaintiff in *Travelers Insurance Company v. Webb* argued the policy owner/decedent's intent, not the beneficiary designation, should determine who received the life insurance proceeds, as here, making that opinion instructive. In that case, Mr. Lancaster was married to Ms. Webb when he obtained life insurance through his employer and named Ms. Webb his beneficiary. *Id.* at \*1. Mr. Lancaster and Ms. Webb divorced two years later, in 1987, and Mr. Lancaster married Mrs. Lancaster a few years later, in 1991. *Id.* Mr. Lancaster had a separate life insurance policy in addition to the one his employer offered, and he changed the beneficiary of this other policy from Ms. Webb to Mrs. Lancaster in 1992. *Id.* Mr. Lancaster never changed the beneficiary of the policy his employer offered, however, and upon Mr. Lancaster's death, Mrs. Lancaster claimed that she, rather than Ms. Webb, should be awarded the benefits of the policy. *Id.*

The trial court disagreed with Mrs. Lancaster and ruled that the person designated as the beneficiary in the insurance policy is the person entitled to the benefits. *Id.* at \*2. Mrs. Lancaster appealed, and the Court of Appeals affirmed the trial court's judgment. *Id.* at \*2-3. The Court rejected Mrs. Lancaster's argument that Mr. Lancaster's will, which purportedly stated that he wanted Mrs. Lancaster to receive the insurance proceeds, amended the insurance contract. *Id.* at \*2. Rather, the Court explained:

> [T]he language in a will does not operate to deprive the named beneficiary of her rights to the policy proceeds. *Cook v. Cook*, 521 S.W.2d 808, 813 (Tenn. 1975). When there is no attempt to change the beneficiary according to the procedures set forth in the policy, the law of this state provides that a constructive trust does not arise, requiring distribution according to the terms of the will, even though the testator clearly indicated in his will that he wanted the insurance proceeds to benefit an individual other than the named beneficiary. *Stoker v. Compton*, 643 S.W.2d 895, 898 (Tenn. [Ct.] App. 1981).

*Id.* The Court also rejected Mrs. Lancaster's argument that Mr. Lancaster and Ms. Webb's divorce vitiated Ms. Webb's right to receive benefits under the policy. *Id.* at \*3 (citing *Sun Life Assurance Co. v. Hicks*, 844 S.W.2d 652, 654 (Tenn. Ct. App. 1992)).

A similar result was reached in *Stoker v. Compton*, 643 S.W.2d 895 (Tenn. Ct. App. 1981). In that case, the Court of Appeals rejected a claimant's argument that the terms of a decedent's will should govern the distribution of insurance proceeds when the terms of the will conflicted with the beneficiary designation of the decedent's policy. *Stoker*, 643 S.W.2d at 898. The *Stoker* Court approved the statement from an earlier

Court of Appeals opinion providing that: "The proceeds of an insurance policy in which a beneficiary is named are not subject to an oral gift or assignment and do not pass by will so as to defeat the rights of the named beneficiary." *Id.* (quoting *Metro. Life Ins. Co. v. Bryant*, 191 S.W.2d 449, 475-76 (Tenn. Ct. App. 1945)); *see Bowers v. Bowers*, 637 S.W.2d 456, 459 (Tenn. 1982) (holding property settlement agreement has no effect on former wife's entitlement to life insurance proceeds where decedent designated her as beneficiary during marriage and did not change designation prior to accidental death); *In re Estate of Williams*, No. M2000-02434-COA-R3-CV, 2003 WL 1961805, at *19 (Tenn. Ct. App. Apr. 28, 2003) (holding former wife, who was named beneficiary of annuities, was entitled to proceeds upon former husband's death even though annuities themselves were awarded to husband as part of property division during divorce).

As in the case at bar, the opinions discussed above involved fact patterns where the decedent named a beneficiary in the policy and a third party relied on the terms of a will or property settlement to argue the decedent meant for someone other than the named beneficiary to receive the proceeds. The Estate and Conner have not sought to introduce Exhibit 1 as a holographic will, but they rely on it as well as oral conversations Ms. Lane had to prove her intent with respect to the $300,000 at issue.[6]

In contrast to the facts here, the cases the Estate and Conner rely on to argue the trial court was correct in disregarding Ms. Lane's beneficiary designation involved legal mandates that required the policy holder to name a particular beneficiary. They are distinguishable from the facts of this case, however, and do not determine the outcome here. In *Holt v. Holt*, 995 S.W.2d 68, 69 (Tenn. 1999), for example, the parties' marital dissolution agreement provided that Mr. Holt would maintain a $100,000 life insurance policy to secure his obligations for the payment of child support and other debts, and he was ordered to list Mrs. Holt as trustee for the benefit of the parties' child. Mr. Holt failed to comply with the terms of the agreement; he obtained a $50,000 policy and named his mother as the sole beneficiary. *Holt*, 995 S.W.2d at 70. A few years later, Mr. Holt obtained a $40,000 life insurance policy through his employer and designated his son as the beneficiary, with no one listed as trustee. *Id.* Upon the decedent's death, the son received the proceeds from the $40,000 policy, and the son and his mother filed suit in an effort to obtain the proceeds from the $50,000 policy. *Id.* Noting that equitable remedies are available to protect individuals "legally mandated to be listed as beneficiaries of a life insurance policy," the *Holt* Court wrote that:

> [I]t is clear under Tennessee law that an enforceable agreement, such as a marital dissolution agreement, which mandates that an individual be listed as a beneficiary of a life insurance policy existing at the time of the

---

[6]The record does not include the Decedent's policy or the change of beneficiary form she allegedly filled out to add her sister as a co-beneficiary. The parties agree, however, that Ms. Lane did, in fact, add Ms. Courteaux as a beneficiary as required by the insurance company, and there is no issue with respect to the validity of the change to her policy.

agreement vests in that individual an equitable interest in the designated policy.

*Id*. at 72. As a result, the Court imposed a constructive trust on the $50,000 proceeds for the benefit of the decedent's son. *Id.* at 77-78; *see also Dossett v. Dossett*, 712 S.W.2d 96, 99-100 (Tenn. 1986) (holding father's attempt to change beneficiary designation from children to second wife was ineffectual where father was required by divorce decree to maintain life insurance with children of marriage as beneficiaries); *Herrington v. Boatright*, 633 S.W.2d 781,783 (Tenn. Ct. App. 1982) ("[W]here a divorce decree requires the husband to keep a life insurance policy in effect and denies him the right to change the beneficiary, then the wife as the named beneficiary has a vested interest in the policy."); *Goodrich v. Mass. Mut. Life Ins. Co.*, 240 S.W.2d 263, 269-70, 272 (Tenn. Ct. App. 1951) (disregarding insured's change of beneficiary from former wife to son where insured was required by divorce decree to keep former wife as beneficiary).

Unlike the policy holders in *Holt*, *Dossett*, *Herrington*, and *Goodrich*, Ms. Lane was not legally mandated to name anyone in particular as a beneficiary of her life insurance policy. The Estate and Conner rely on evidence showing her intent that the money be used for Conner's benefit. No amount of evidence regarding her intent, however, changes the fact that she named Ms. Courteaux as a co-beneficiary. Because an insurance policy is a contract between the insured and the insurance company, and because no legal mandate required Ms. Lane to name someone other than Ms. Courteaux as a beneficiary, Ms. Courteaux is entitled to the remaining proceeds of the policy.

Equitable remedies do not come into play under the facts of this case because the express terms of the insurance policy control the outcome. *See Ridgelake Apartments v. Harpeth Valley Utils. Dist. of Davidson & Williamson Cntys.*, No. M2003-02485-COA-R3-CV, 2005 WL 831594, at *9-10 (Tenn. Ct. App. Apr. 8, 2005) (stating equitable remedies are not available where valid contract exists). As a result, the Estate and Conner's equitable arguments are pretermitted.[7]

CONCLUSION

The trial court's judgment is reversed, and we remand this case for the purpose of dissolving the restraining order and ordering the remaining life insurance proceeds to be

---

[7]We acknowledge and reject the Estate and Conner's argument that Ms. Courteaux has waived her right to have this Court review the trial court's judgment because she failed to present the issues on appeal in the precise manner required by the Tennessee Rules of Appellate Procedure. Ms. Courteaux presented a cogent argument with supporting citations and we conclude her brief complies with the Tennessee Rules of Appellate Procedure.

distributed to the appellant, Amanda Davenport Courteaux. Costs of this appeal shall be taxed to the appellees, the Estate of Charles Allen Lane and William Conner Lane.


_____

ANDY D. BENNETT